1
2  LAW OFFICE OF JASON FLORES-WILLIAMS
   JASON FLORES-WILLIAMS
3  Attorney for Plaintiffs
   1851 Bassett St.
4  #509
   Denver, CO 80202
5  303-514-4524
   JFW@JFWLAW.NET
6
7
                    UNITED STATES DISTRICT COURT
8                    IN THE DISTRICT OF COLORADO
9
10 RAYMOND LYALL, GARRY ANDERSON, THOMAS        Case No.: 16-2155
   PETERSON, JERRY RODERICK BURTON,
11 FREDRICK JACKSON, BRIAN COOKS, WILLIAM
   PEPPER, CHRISTOPHER FARRELL, KRYSTAL          **CLASS ACTION**
12 MCEVOY INDIVIDUALLY ON BEHALF OF
   THEMSELVES AND ALL OTHERS SIMILARLY
13 SITUATED;
                                                 COMPLAINT FOR INJUNCTIVE AND
14          Plaintiffs,
                                                 DECLARATORY RELIEF AND FOR
15 vs.
                                                 DAMAGES FOR VIOLATIONS OF THE
16 CITY OF DENVER, A MUNICIPAL CORPORATION,
   MAYOR MICHAEL B. HANCOCK, POLICE CHIEF        FOURTH, EIGHTH AND FOURTEENTH
17 ROBERT C. WHITE, DENVER PUBLIC WORKS
   MANAGER JOSE M. CORNEJO, MAYOR'S CHIEF-       AMENDMENTS TO THE UNITED STATES
18 OF-STAFF EVAN DREYER, COMMANDER
   ANTONIO LOPEZ: INDIVIDUALLY AND IN THEIR      CONSTITUTION (42 U.S.C. § 1983)
19 OFFICIAL CAPACITIES;
20          Defendants
21
22                                               **DEMAND FOR JURY TRIAL**
23
24
25
26
27
28
29
30
31
32

CLASS ACTION - 1

Plaintiffs Lyall, Anderson, Burton, Peterson, Jackson, Cooks, Pepper, Farrell and McEvoy ("Plaintiffs"), by and through their attorney, Jason Flores-Williams, bring this action on behalf of themselves and all others similarly situated, against Defendants City of Denver, Hancock, White, Cornejo, Dreyer, Lopez ("Defendants"). Plaintiffs allege the following based upon information and belief, the thorough investigation of counsel, and personal knowledge as to the allegations pertaining to them.

## NATURE OF THE ACTION

1. Defendants have engaged in a systemic evisceration of thousands of displaced persons' constitutional rights in order to clear the way for new housing and economic development in the Downtown Denver area. While gentrification may have positive benefits for a few, it is not a legal basis for treating this vulnerable class as though their civil rights were non-existent.[1]

2. These violations occurred as part of Defendants' sustained crackdown on the poor and homeless, which has increased with greater ferocity since the enactment of the *Denver Unauthorized Camping Ban* on May 14, 2012, Denver Municipal Code 38.86.2.

---

[1] The Metro Denver Homeless Initiative, a nonprofit homeless advocacy group that receives funding from U.S. Department of Housing and Urban Development ("HUD"), states that there are 5,467 homeless persons in the Denver County Metro are in 2016, pursuant to HUD's definition of homelessness: "Individuals and families who lack a fixed, regular, and adequate nighttime residence." See 24 CFR Part 91, 582 and 583 for the other three parts of the definition.

CLASS ACTION - 2

3.  This nationally-controversial city ordinance, which was strongly supported by pro-business groups like the Downtown Denver Partnership, led to open season on anyone in Downtown Denver who appeared to be poor and attempting to protect themselves from weather in this city that famously exists above 5,000 feet. "[W]ithout limitation, any tent, tarpaulin, lean-to, sleeping bag, bedroll, blankets, or any form of cover or protection from the elements other than clothing." *Id.*

4.  Denver Municipal Ordinance 38.86.2 sweeps within its coverage many forms of innocent and constitutionally-protected activity, giving law enforcement unconstitutional free rein to make arbitrary and discriminatory determinations regarding implementation of the law and thus who is allowed to be exist in public spaces in Downtown Denver. [2]

5.  In the immediate aftermath of this ordinance, Plaintiffs and thousands of similarly-situated persons in Downtown Denver were told to "move along" in order to clear the 16th Street mall and surrounding areas of people whom Defendants deem as undesirable. [3]

6.  The effect and application of the ordinance was that any persons who *might appear poor or displaced to Denver Police* were now prohibited from existing in the Downtown Denver area.  One can hardly imagine more vindictive and

---

[2] The constitutionality of Denver Municipal Code 38.86.2 is not expressly challenged here. Yet, the overbreadth of this ordinance encourages the arbitrary and unconstitutional policies and practices described herein. Should this Honorable Court determine *sua sponte* to review the constitutionality of Denver Municipal Code 38.86.2, Plaintiffs would be pleased to submit briefs as to its unconstitutionality.
[3] University of Colorado Political Science Professor Tony Robinson's and Denver Homeless Out Loud's statistical study regarding the disproportionate impact of Denver Ord. 38.86.2 entitled *The Denver Camping Ban, A Report From the Street* is cited throughout.

CLASS ACTION - 3

unconstitutional treatment than being tired, poor and exhausted and not being allowed to sit down to rest in a public space without being immediately ordered to get up and move. This is a far different greeting than the one that many of our families received when first arriving this country: *"Give me your tired, your poor, your huddled masses yearning to breathe free, the wretched refuse of your teeming shore. Send these, the homeless, tempest-tossed to me, I lift my lamp beside the golden door!"*

7.  Plaintiffs and thousands of other Class Members began to move to areas of the city where they felt they would be safe from Defendants' constant harassment. These areas were near the shelters and services provided by charitable nonprofits such as the Denver Rescue Mission, Samaritan House and the St. Francis Center, which are generally located on Park Avenue and Broadway East of Coors Field.

8.  Plaintiffs and Plaintiff Class slept mainly outside of the shelters as there were no available beds in the shelters. Due to the increased cost of living in Denver, the number of homeless persons have grown significantly while shelter beds and services have remained stagnant.  The following chart is from *Denver Camping Ban, A Report From the Street*.

CLASS ACTION - 4



"*Even as the number of Denver's homeless residents has dramatically grown, the number of emergency shelter beds has been rather stagnant for years.  In 1988 there were shelter beds available for 55% of Denver's homeless population; today emergency shelter beds are available for only about 10% of the homeless population.*" Pg. 13, *Denver Camping Ban*.

9.   Using Denver Municipal Code 38.86.2, "The Camping Ban," and vague encumbrance laws as almost universal justification to clear out undesirables, Defendants now began to systematically detain, cite and arrest Plaintiffs around the homeless shelter areas while seizing and destroying their property in what has sadly come to be known as "The Homeless Sweeps."[4]

-------------------

[4] Defendants have most often used the "Camping Ban" to circumvent 4th Amdt. guarantees against warrantless searches and seizure, but have also used other vague ordinances such as "The Rules Against Minor Encumbrances," Denver Revised Municipal Code, Sections 2-91, and 49-246 through 49-254. In this case, The Department of Public

CLASS ACTION - 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20  10. The "Homeless Sweeps" have been well-documented by the media. Defendants have

21      been on notice for at least a year that their policy and custom of raiding areas where

22

23      homeless people are trying to survive and intentionally taking and destroying their

24      property violates the federal constitution. Yet, Defendants have only increased the

25

26      intensity and frequency of the sweeps.

27

28      _____

29

30  Works has been empowered by the city to freely determine what an encumbrance is and then take possession of it
31  via removal and usually destruction of the item. The use of these ordinances to circumvent fundamental rights is
    reminiscent of the Jim Crow era in the South where ordinances were used to maintain institutionalized
32  discrimination against African-Americans. Here, the institutionalized discrimination is against the poor and
    displaced.

CLASS ACTION - 6

11. The policies, practices and conduct of Defendants, i.e. The Homeless Sweeps have been something out of 1930's Depression Era America where the homeless and displaced have been consistently harassed, detained, arrested, deprived of their rights and property with no concern for substantive and procedural safeguards. One of the main statements repeated over again and again by police officers during these sweeps has been: "If you people would just leave Denver, all of this would stop."

12. These ongoing sweeps are conducted without notice or with inadequate notice and in a manner that prevents Plaintiffs and Plaintiff Class from retrieving their property. Plaintiffs are often ordered to stand by as their belongings are thrown into Defendant Department of Public Works' dump trucks by not only DPW workers, but inmates from county jail. While perhaps not legally cognizable, there is something ugly about using poor people against poor people in this manner, i.e. those caught in mass incarceration to destroy the property of the destitute.

13. A homeless person carries their life with them: their documents, their medicines, their valued mementos and photographs of family and friends that get them through the long nights out on the streets. It is difficult to imagine what it must feel like to be already homeless and suffering, then be forced to watch as everything you own in the world is thrown into a dump truck while you are afforded no means to contest the seizure and destruction of your property.

14. They way in which Defendants have implemented their policies shock the conscience. In a December 15, 2015 sweep, Defendant Police Dep't ordered homeless around the Samaritan House to evacuate the area, but leave their belonging, telling Plaintiffs and Plaintiff Class that if they returned before being told that it was permissible, then they

CLASS ACTION - 7

would be arrested. It was a bitterly cold day, less than 10 degrees and snowing. Plaintiffs and member of Plaintiff Class were forced into the cold without their jackets, blankets, any items to keep them warm. When they returned, they were met with the all-too-familiar sight of dump trucks and their property being thrown away like trash. Plaintiff Fredrick Jackson asked a Police Officer: "Why are you doing this to us?" The Officer responded, "You can try to sleep on sidewalks, but you can't be warm."

15. Defendants practices, policies and conduct would have violated the Magna Carta in 1215, the prohibition against being *disseized* without due process of law. Serfs were, at least, allowed to maintain their property. Now, more than 800 years later, property can be seized from the poor and displaced because they are perceived as they are perceived as the vulnerable outcasts and undesirables of our age.

16. As a matter of contrast, imagine if Plaintiffs and Plaintiff Class were corporations. One can barely fathom the litigation that these Courts would be forced to address if one of the lead Plaintiffs were Exxon, Nestle or Monsanto. There was no *ex parte* hearing regarding the seizure of property. No warrants were provided or shown. No civil forfeiture hearings. No adequate notice or opportunity to be heard. Plaintiffs and Plaintiff Class are often caught in the "jaws of the pincers," a term used most recently in corporate asset forfeiture defense where the entity is facing parallel criminal and civil liability. See *SEC v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998). When caught in the jaws of the pincers, courts recognize that citizen's constitutional rights are in an especially perilous position due to the seizure of assets with the need to mount a defense. Here, Defendants often seize and destroy Plaintiffs' property

CLASS ACTION - 8

including records and identification while arresting and taking them to jail, so that

Plaintiffs' spend longer time in jail trying to prove who they are because their

Driver's license or military identification cards have been seized. They are, like

corporate defendants, caught in the jaws of the pincers, save that corporations are

afforded many more constitutional safeguards than are the homeless. See line of cases

beginning with *U.S. v. Monsanto*, 491. U.S. 600, 615 (1989) for the due process

protections afforded U.S. Corporations re asset forfeiture.

17.  The policies, practices and conduct ratified, approved and implemented by

Defendants—actions which continue to present—have resulted in constitutional

deprivations, physical and mental harms to Plaintiffs and the thousands of similarly-

situated displaced in the City of Denver.

18. Plaintiffs, on behalf of themselves and other similarly-situated displaced persons in

the City of Denver, claim that the intentional taking and destruction of their personal

property violated the Fourth Amendment ban on unreasonable searches and seizures.

19.  Plaintiffs, on behalf of themselves and other similarly-situated displaced persons in

the City of Denver, claim that the taking of their property without hearing, reasonable

notice or probable cause, constitutes violation of their federal constitutional right to

due process pursuant to the Fourteenth Amendment.

20. Plaintiffs, on behalf of themselves and other similarly-situated displaced persons in

the city of Denver, claim that the outrageous treatment that they have been forced to

endure as part of Defendants' policies, practices and conduct violates the Eighth

Amendment ban against cruel and unusual punishment.

CLASS ACTION - 9

21. Plaintiffs, on behalf of themselves and other similarly-situated displaced persons in the City of Denver, claim that the arbitrary and discriminatory way in which Defendants have enforced city ordinances against them while seizing and destroying their property during sweeps and other interactions violates their right to Equal Protection of the law pursuant to Fourteenth Amendment.

22. Plaintiffs, on behalf of themselves and other similarly-situated displaced persons in the City of Denver, seek injunctive relief enjoining Defendants from engaging in the mass-scale, indiscriminate searches and seizures concomitant with the taking and destruction of their property known as "The Homeless Sweeps" as these wide-spread and continuing policies and practices, which have been ratified, approved and implemented by Defendants, violate Plaintiffs' and Plaintiff Class' federal constitutional rights pursuant to U.S. Const. Amdts. IV, VIII & XIV.

23. Plaintiffs, on behalf of themselves and other similarly-situated displaced persons in the City of Denver, seek a declaratory judgment stating that the Denver Municipal Code 38.86.2 and other vague ordinances not be used as blanket justification to vitiate the fundamental rights of Plaintiffs and Plaintiffs Class pursuant to the Equal Protection Clause of U.S. Const. Amdt. XIV. City ordinances in 2016 must not be used for discriminatory purpose against vulnerable classes of persons in the same way that ordinances were in the Jim Crow Era of the South.

24. Plaintiffs, on behalf of themselves and other similarly-situated displaced persons in the City of Denver, further seek a declaratory judgment that the policies and practices of Defendants as alleged herein are unlawful under the federal constitutional rights enumerated herein.

CLASS ACTION - 10

25. In addition to their primary claims on behalf of the Class for injunctive and declaratory relief, Plaintiffs seek actual and punitive damages resulting from Defendants' intentional destruction of their personal property as well as the cruel and unusual punishment inflicted upon them in violation of the federal constitution, Amdts, IV, VIII and XIV.

## JURISDICTION & VENUE

26. This Court has jurisdiction based on 28 U.S.C. §§ 1331 and 1343(a)(3). Jurisdiction supporting the claim for attorney fees is conferred by 42 U.S.C. § 1988.[5]

27. Venue is proper in the District of Colorado 28 U.S.C. § 1391(b) and in that the policies, practices and conduct complained of herein took place in Colorado. In addition, Defendants performed their duties and ratified this conduct within the District.

## PARTIES

28. Plaintiff Raymond Lyall is a resident of the City of Denver and at all relevant times herein was and now is homeless.

29. Plaintiff Thomas Peterson is a resident of the City of Denver and at all relevant times herein was and now is homeless.

_____

[5] None of the claims herein sound in tort, so that immunity is unavailable to Defendants pursuant to the Colorado Governmental Immunity Act, Colorado Revised Statutes (C.R.S.) 24-10-101 et seq.

CLASS ACTION - 11

30. Plaintiff Brian Cooks is a resident of the City of Denver and at all relevant times herein was and now is homeless.

31. Plaintiff Garry Anderson is a resident of the City of Denver and at all relevant times herein was and now is homeless.

32. Plaintiff William "Willie" Pepper is a resident of the City of Denver and at all relevant times herein was and now is homeless.

33. Plaintiff Krystal McEvoy is a resident of the City of Denver and at all relevant times herein was and now is homeless

34. Plaintiff Christopher Farrell is a resident of the City of Denver and at all relevant times herein was and now is homeless.

35. Plaintiff Jerry Roderick Burton is a resident of the City of Denver and at all relevant times herein was and now is homeless.

36. Plaintiff Fredrick Jackson is a resident of the City of Denver and at all relevant times herein was and now is homeless.

37. Plaintiffs are informed and believe that the acts of Defendants detailed herein were undertaken in the execution of customs, policies and practices of authorized policymakers of the City of Denver and were joined in and/or implemented by the remaining Defendants, and each of them, acting as the agent, servant, employee and/or in concert, and/or in conspiracy with each of said other Defendants.  Each of the defendants caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries by, among other things, personally participating in said conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing or setting in motion policies, plans and actions that led to the unlawful conduct; by

CLASS ACTION - 12

failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to maintain adequate training and supervision; and by ratifying the unlawful conduct taken by employees under their direction and control, including failing to take remedial and disciplinary actions.

38. The acts complained of herein were intentionally and jointly committed, and will continue to be committed jointly and systematically by Defendants unless an injunction is issued by this Court.

39. All of the following individual Defendants are sued in their individual and official capacities:

40. Defendant City of Denver is a municipal corporation of the State of Colorado.

41. Defendant Michael B. Hancock is the Mayor of the City of Denver and has either directed or ratified the unlawful conduct alleged herein.

42. Defendant Robert C. White is Chief of the Denver Police Department, and in that capacity is responsible for the operations of the Police Department and for the direction and ratification of the unlawful conduct alleged herein.

43. Defendant Jose M. Cornejo is the Manager of Denver Public Works and in that capacity is responsible for the operations of Denver Sanitation and the unlawful conduct alleged herein.

44. Defendant Evan Dryer is Chief of Staff to the Mayor's Office and has either directed or ratified the unlawful conduct alleged herein.

45. Defendant Antonio Lopez of the Denver Police Department was the Commander of District 6 during the period in which the sweeps detailed here occurred and so in that capacity was responsible for unlawful conduct alleged herein.

CLASS ACTION - 13

1
2
3                                    CLASS ALLEGATIONS
4
5      46. The claims set forth hereinafter are brought by Plaintiffs on their own behalf and as
6
7          representatives of a Class of similarly-situated persons pursuant to Rules 23(a),
8          23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. The Proposed Class
9
10         consists of all homeless persons in the City of Denver whose personal property has
11         been taken and destroyed—or *will be* taken and destroyed—by the execution of
12
13         Defendants' policies and practices known as "The Homeless Sweeps," which have
14         deprived thousands of people of life, liberty and property without due process of law.
15     47. The members of the Class are so numerous that individual joinder of all members is
16
17         impracticable. Referring to the aforementioned statistics compiled in *The Denver*
18         *Camping Ban* and the Metro Denver Homeless Initiative in conjunction with Housing
19
20         and Urban Development (HUD), members of the proposed class are in the thousands.
21     48. Along with satisfying the numerosity requirement, this action is properly brought as a
22
23         class action because: (a)The disposition of Plaintiffs' and proposed Class Members'
24         claims in a class action will provide substantial benefits to both parties and the Court,
25         allowing the Court (and Defendants) to address a systemic issue in one class action,
26
27         rather than having to address hundreds if not thousands of related civil rights actions
28         in the next several years; to wit: this is exactly the type of large-scale constitutional
29
30         claim that falls perfectly within the ambit of Federal Rule of Civil Procedure 23(b)(2),
31         allowing the Court to address a constitutional issue while providing access to justice
32
           to displaced and vulnerable people who would not otherwise be able to avail

themselves of the judicial system; (b) The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class Member were infringed or violated in the same fashion; (c) There are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include but are not limited to: (i)Whether Defendants' policies, practices and conduct of taking and destroying the personal property of homeless people, without providing either adequate notice or the opportunity to retrieve personal possessions before they are destroyed, and without a legitimate governmental interest, violated and continues to violate the Class Members' federal constitutional rights against unreasonable search and seizure; (ii) Whether Defendants' policies, practices and conduct of taking and destroying the personal property of homeless people, without providing either adequate notice or the opportunity to retrieve personal possessions before they are destroyed, violated and continues to violate the Class Members' due process rights under the United States Constitution;  (iii) Whether Defendants' conduct of taking and destroying the personal property of homeless people, without providing either adequate notice or the opportunity to retrieve personal possessions before they were destroyed, and without a reasonable basis or legitimate governmental interest, violated and continues to violate Class Members' rights of Equal Protection; (iv) Whether injunctive relief restraining further unconstitutional and unlawful acts by Defendants should be ordered by the Court and, if so, the nature of that injunctive relief; (v) Whether Plaintiff and Plaintiff Class Members are entitled to declaratory judgment,

CLASS ACTION - 15

compensatory and punitive damages, and attorney's fees and expenses; (d) Plaintiffs'

claims are typical of the claims of the members of the proposed Class. Plaintiffs and

Class Members have been injured by the same wrongful policies, practices and

conduct of Defendants. Plaintiff's claims arise from the same practices and conduct

that give rise to the claims of all Class Members and are based on the same legal

theories; (e)  Plaintiffs will fairly and adequately protect the interests of the Class in

that they have no interests antagonistic to those of the other Class Members, and

Plaintiffs have retained an attorney familiar with the social and constitutional issues

facing this Class and experienced in complex litigation; (f) A class action is

preferable and superior to other available methods for the fair and efficient

adjudication of this controversy for the following reasons: (i) As the primary relief

sought is injunctive in nature, the burden and expense make in impractical for class

members to seek redress individually for the wrongs done to them.  The nature and

amount of monetary damages sustained by each Class Member is similar in nature

and may be established by common proof.  Individual litigation by each class member

would substantially burden the operation of the judicial system; (ii) This action will

promote an orderly and expeditious administration and adjudication of the proposed

Class claims, economies of time, effort and resources will be fostered and uniformity

of decisions will be insured; (iii) Without a class action, Class Members will continue

to suffer damages, and Defendants' violations of law will proceed without remedy;

and (iv) Plaintiffs know of no difficulty that will be encountered in the management

of this litigation which would or should preclude class certification.

CLASS ACTION - 16

49. The potential class fits perfectly within the purview of Federal Rule of Procedure
23(b)(2), where courts focus on the Defendants' conduct and actions and determine
whether they need to be enjoined. In contrast to Federal Rule of Civil Procedure
23(b)(3), the focus of the court's inquiry is not on how each individual class member
is affected by Defendant's conduct, but on the legality and unconstitutionality of the
Defendants' conduct itself.[6] It is designed for civil rights cases such as this where a
disenfranchised class of persons are the victims of systemic abuses conducted under
the color of law.

50. The rights at stake are fundamental. Without class action certification, the proposed
Class will have no access to justice regarding the unconstitutional conduct that is
occurring on the very doorstep of this Honorable Court.

COMMON FACTUAL ALLEGATIONS

51. Approximately 5,500 of Denver's 700,000 residents are homeless, according to the
Metro Denver Homeless Initiative, a nonprofit homeless advocacy group that receives
funding from U.S. Department of Housing and Urban Development. As rents have
risen and the number of displaced have increased, shelter beds have remained
stagnant. *Supra*. It seems ridiculous to have to repeat, but prejudice prevails:
homelessness is not a choice, but a terrible societal condition that afflicts the poor, the

---

[6] A Motion to Certify a 23(b)(2) Class along with supplemental authority, will, of course, follow this complaint.

CLASS ACTION - 17

lower-working class, the mentally ill, the physically ill, those people who have fallen through the cracks of our society because they did not have a safety net to stop their fall. Plaintiffs and Plaintiff Class are working people who have suffered financial loss and could not recover from it. They got sick, lost their jobs, couldn't pay their medical bills and now live on the streets. Rather than help them get back on their feet, Defendants have singled out Plaintiffs and Plaintiff Class and selectively over-enforced ordinances against them as a way to clear the city of "undesirables" for purposes of economic development.

52. For more than two years, Defendants have engaged in an ongoing and continuing policy and practice of raids on those Denver residents who are unsheltered, in which Defendants take and destroy the personal property of Plaintiffs and Plaintiff Class without concern for due process or the right to be free of unreasonable searches and seizures.  Defendants have conducted their policies in a manner that can only be described as cruel. The middle of Winter, a foot of snow on the ground, bitter cold, raiding areas where they knew displaced persons were simply trying to rest and exist in peace and forcing them out, alone, into the coldest night. There have been instances where female potential Class Members' have been forced by Defendants to go so far out from the familiarity of Downtown that they end up sleeping in dangerous areas where they have been raped. In other times, potential Class Members have been harassed by Defendants into unknown areas where they were beaten and even killed. These sweeps that have been ratified and implemented by Defendants not only violate Plaintiffs' rights, but our concept of a just society.

CLASS ACTION - 18

53. On July 13, 2016, eighty members of the Plaintiff Class were seeking safety together away from the constant harassment that has come to be life for the displaced since the passing of the "Camping Ban." A group doing nothing but trying to rest amongst people that they know, in a safe community, sheltering themselves next to the Platte River, who were unnecessarily confronted by Defendant Denver Police, told to move or be arrested, forced to leave their belongings that they never saw again nor had the opportunity to retrieve. Defendants seized and destroyed property included cherished personal items, jewelry, clothing, jackets and identification. Thirty-six of these homeless people were cited with violation of city ordinances, so that they were caught in the aforementioned "jaws of the pincers," both criminally charged and facing civil forfeiture, yet without the due process and procedural safeguards normally afforded in the civil forfeiture context. See 18 U.S.C. § 983. Plaintiffs and Plaintiff Class were forced away with no place to go. No services. No shelters. No notice given by Defendants prior to the taking and seizure of their property.

54. Defendant's taking and destruction of property was foreseeable as Defendants had performed it on numerous prior occasions. The sweeps had become a custom of the City of Denver.[7]

_____

[7] See *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), for a discussion concerning municipal liability, custom and adopted policy. Plaintiffs would argue that the consistency, orchestration and complexity of the homeless sweeps establish municipal liability for purposes of *Monell*. See also *City of Canton v. Harris*, 489 U.S. 378 (1989), where Hon. S. Ct. Justice O' Connor held, in a concurring opinion, that municipal liability is established when municipalities show a willful disinterest in city actions and conduct that it knows to be possibly unconstitutional. As stated, the sweeps have been covered extensively in media. Defendant City of Denver has been on notice.

CLASS ACTION - 19

55. These mass sweeps were Plaintiff and Plaintiff Class's rights civil rights have been eviscerated have been going on for about a year.[8]  On October 24th, 2015, numerous officers of the Denver Police Department descended on the area around 2500 Lawrence St. where about 35 displaced persons including Plaintiffs Lyall and Burton, had come together in a park that was, upon information and belief, owned by the Denver Housing Authority, a city agency.

56. Defendants interrogated and detained these Plaintiffs, conducted approximately 10 arrests, seized and destroyed personal property belonging to these Plaintiffs without providing notice or the required procedural safeguards as to how this property could be retrieved. Property included military records, identification, blankets, clothing and a wheelchair—all taken and indiscriminately thrown into city dump trucks. No legitimate or lawful basis existed for this wholesale confiscation and destruction of the personal property of these Plaintiffs and Plaintiff Class.  None of these actions were authorized by a warrant.  In many cases, the property the Defendants have taken and destroyed represents substantially all the possessions of these homeless men and women.

_____

[8] Since the enactment of the "Camping Ban," there have been innumerable instances of unreasonable searches of homeless persons and seizure of their property by Defendants. But for purposes of these Common Alleged Facts, we are focusing on instances of mass sweeps where more than 10 Denver Police, workers at the Dep't of Public Works and, sadly, inmates at the local county jail, are sent in by the City of Denver to seize the possessions of Plaintiffs and Plaintiff Class without regard for their rights.

CLASS ACTION - 20



57. In a subsequent sweep on December 15, 2015 that can only be described as brutal and inhumane, Defendants similarly raided the area around Park and Lawrence Streets where Plaintiffs had come to stay due to the lack of beds at the Denver rescue and other missions. *Despite the fact that it was 10 degrees and snowing*, Defendants seized and destroyed Plaintiffs' property and forced Plaintiffs and Plaintiff Class out into the cold with none of their belongings.[9]

_____

[9] This sweep was documented here: http://www.westword.com/news/homeless-denver-police-officers-threw-away-possessions-without-warning-7443603.

CLASS ACTION - 21

58. In an admission, The Mayor's Chief of Staff, Defendant Evan Dryer, stated: "Yes, we need to change the procedure for how people's stuff is taken." But the sweeps continued. In fact, Defendant Dreyer and the Mayor's Office pushed for more sweeps as is evidenced by emails released to *Westword* on April 7, 2016.[10]

59. On March 8-9, 2016, there was another sweep across from Samaritan House located 2301 Lawrence St. in Denver. There were no adequate prior posting informing Plaintiffs and Plaintiff Class of the coming sweeps and intended deprivations of their property.[11] Defendants moved in and without lawful basis seized blankets and personal belongings, cell phones and items essential to survival. Many of the Plaintiffs, including 65-year old Plaintiff Pepper, lost everything they owned.

60. As recently as the week of August 20th, 2016, there was another sweep down the Platte River where many of the victims of the prior sweeps had fled to where they thought they were safe from the policies, practices and conduct of Defendants. Again personal belongings were seized and destroyed. People were forced to flee. No warrant was shown pursuant to the requirements of the Fourth Amendment. No fair process was given pursuant to due process of the Fourteenth Amendment. There were no procedural or substantive safeguards for the maintenance and protection of their property, which as a constitutional issue is independent of any other analysis. The government is not permitted to seize and convert citizens' property without affording

---

[10] http://www.westword.com/news/homeless-sweeps-documents-show-denver-questioning-its-own-protocol-7791233
[11] Adequate notice was never give, but these claims don't solely hinge on notice. A City cannot circumvent Constitutional Rights by putting up a sign saying: "If you are here tomorrow at 10 a.m., we are going to violate your constitutional rights."

CLASS ACTION - 22

citizens notice and opportunity to challenge the deprivation. *Matthews v. Eldridge*,
424 U.S 319 (1976).

61. Plaintiffs and Plaintiff Class have never renounced rights to their property. Plaintiffs
and Plaintiff Class have never signed waivers of their property interests. Upon
information and belief, there have been no administrative hearings regarding the
forfeiture of Plaintiffs' property. The State has not claimed that the property was
derived from an illegitimate source of income or the product of any crimes. Property
was seized and destroyed without a criminal conviction.

62. Nuisance Abatement, another ordinance that has been used by Defendants to justify
the taking and destruction of citizen's property, has, upon information and belief, not
been cited by Defendants as justification with regard to the seizures described herein.

63. *The Homeless Sweeps* are exactly as described. Sweeps of homeless persons and their
property in a systemic criminalization and targeting of the poor and dispossessed in
the downtown area that tracks perfectly with the development of Downtown
Denver.[12]

64. Plaintiff Raymond Lyall is a construction worker who, like millions of Americans,
has fallen upon hard times. Mr. Lyall has been homeless for the last 3.5 years,
working when he can—he suffers from a disability, three crushed vertebrae—trying
to rebuild his life. Unfortunately, Defendants have made that process infinitely more
difficult in unlawfully seizing his property on numerous occasions. On October 24,

_____

[12] See *Denver will restart long-dormant Confluence Park Project*, published Denver Post July 10, 2016 at 12:02
a.m.

CLASS ACTION - 23

2015, as part of the Defendants' sweeps at 2500 Lawrence St.—a parcel then owned

by Denver Housing Authority—Plaintiff Lyall's and other Plaintiff Class Members'

property were seized and thrown into city dump trucks without notice or means of

retrieval. Defendants provided no opportunity for hearing or challenging the

forfeiture. In insisting that his and other Plaintiffs' rights were being violated, Mr.

Lyall was arrested by DPD during this sweep and spent 22 hours in jail. Two months

later, while doing laundry in the vicinity of 2500 Lawrence, Mr. Lyall was detained

without cause by the Defendant Police Department. While being detained in a squad

car, Defendant Police Department seized his wallet, the key to his bike lock—a

bicycle that he depended on for transportation—and the only money he had that day

for food, which was $2.85. Defendant Denver Police again refused to inform Mr.

Lyall where he could retrieve his property. He was never arrested. Plaintiff Lyall has

since been actively involved in bringing light to the consistent harassment and

constitutional deprivations being inflicted upon Plaintiff Class and as such is a well-

suited lead plaintiff in this cause.

65. Plaintiff Garry "Styx" Anderson's personal property has been confiscated and

destroyed by Defendants in a manner that has prevented him from working and

reclaiming shelter.  On March 8, 2016, as part of the "Denver Rescue Mission

Sweeps," Defendants illegally seized and destroyed, without notice, the entirety of

Mr. Anderson's personal belonging including his tent, his sleeping bag and the tools

that he used for wood working. All of these items were indiscriminately thrown into

Dep't of Public Works dump trucks without making any effort to ascertain that they

were trash. Mr. Anderson is known as "Styx" for his ability as a woodworker. When

CLASS ACTION - 24

Defendants took his tools, they took his only means of making a living and earning enough money to get back into a home. He was given no notice and no opportunity to retrieve these items.

66. Plaintiff Thomas Peterson, a disabled veteran, has had everything taken from him by Defendants. At the March 8, 2016 sweep at 2500 Lawrence St., Defendants took Mr. Peterson's wheelchair, his military records, his identification and photographs of his family. He was forced to stand and watch as his and others' belongings were thrown away like garbage into city trucks. These were military records detailing his service to the country. Mr. Peterson was given no notice or means for retrieval of his property.

67. Plaintiff William Pepper is a 65-year old black man originally from Alabama, a state where the struggle against systemic civil rights violations are a dark part of American history. At the March 9, 2016 sweeps across from Samaritan House, Defendants illegally seized and destroyed three suitcases of Plaintiff Pepper's clothes—all of his clothes—his cell phone and his IPOD with his favorite music. Plaintiff Pepper and Plaintiff Class were given no means for retrieving their belongings. Below a photo of Defendant Denver Police Department arriving to execute this sweep.



68. Plaintiff Brian Cooks is a young African-American gay male who goes by the name
of "Lady B," who like many young persons of color in the gay community is
suffering from homelessness. Plaintiff Cook has been the victim of numerous sweeps
affecting Plaintiff Class. As part of the Park Avenue and Lawrence Sweeps that
occurred through Summer 2015, his possessions were seized and destroyed without
notice or a means of retrieval. As part of Defendants' continued sweeps of the Platte
River area and Confluence Park, on April 4, 2016, Defendants seized his blankets and
sleeping bag. When he complained, he was arrested.

69. Plaintiff Jerry Roderick Burton was an accountant before he became homeless in
August of 2015. Defendants have seized and destroyed his property without due
process on numerous occasions including the aforementioned March 9, 2016 sweep

CLASS ACTION - 26

and as recently as last week, Thursday, August 18, 2016 where Defendant Denver

Police Department detained him without cause and seized his personal belongings

without providing notice or means by which he could retrieve them.

70. Plaintiff Fredrick Jackson, a Denver native, has had his property seized and destroyed

by Defendants on numerous occasions. On December 15th, the day in which the

homeless were forced to be in sub-ten degree freezing cold without their belongings,

Plaintiff Jackson and other class member were told by police to go inside Samaritan

House, but to leave their belongings on the sidewalk. If they in any way disobeyed,

they would be arrested. When Plaintiff Jackson and other class members returned,

they saw Department of Public Works' dump trucks full with their belongings.

Plaintiff Jackson and others were not informed with regard how they could retrieve

their property. Upon information and belief, it was destroyed.

71. Plaintiff Christopher Farrell and his long-time partner, Krystal McEvoy have been

homeless for more than five years, yet like many homeless couples have struggled to

remain together on the streets. Since the passing of the "Camping Ban" ordinance,

Defendants have illegally seized numerous belongings from them including their

laptop computer, cell phone, identification, mental health medication. These seizures

have been random and conducted without regard for the rights of these Plaintiffs and

the Plaintiff Class. When Plaintiffs Farrell and McElvoy asked where they could

retrieve the medicine, they were told by police officers that "[T]hey took them to the

dump and threw it away." Upon information and belief, this event took place around

the first of June 2016 along the Cherry Creek pathway.

CLASS ACTION - 27

72. Finally, there are members of the proposed Plaintiff Class that are invisible. Often afflicted by severe mental illness, they are the people who we ignore and even step over as we go about our lives. These members of the potential Plaintiff Class are incapable of accessing justice on their own. They don't have addresses, phones, places where they can be reached on an even inconsistent basis. Yet, they, too, have suffered from the policies, practices and conduct resulting in the deprivations described herein. These nameless people aren't mentioned very often, so there is a duty to mention them here. They, insofar as applicable, are members of this proposed Class pursuant to Federal Rule 23(b)(2). One hopes that an injunction and declaratory relief in this matter enjoining the conduct of Defendants will somehow, in some small way, serve to bring some dignity to their difficult lives.

**REQUISITES FOR RELIEF**

73. Defendants' policies, actions and conduct have resulted and will result in irreparable injury to Plaintiffs and Plaintiff Class. Defendants have made it plain by their actions, the ongoing nature of their activities, and their public statements that they intend to continue the unlawful conduct described above.  Defendant City of Denver has a policy and practice of confiscating and destroying the personal property of Plaintiffs and members of the Plaintiff Class without legal basis and the remaining Defendants have and will continue to participate in implementing this policy and practice unless and until restrained by an injunctive decree of this Court. The acts of Defendants as alleged above constitute violations of established constitutional rights of Plaintiffs

CLASS ACTION - 28

and the Plaintiff Class, and Defendants could not reasonably have thought that their conduct in intentionally seizing and destroying all of Plaintiffs' personal property as alleged herein was consistent with Plaintiffs' constitutional rights.

74. An actual controversy exists between Plaintiffs and Defendants in that Defendants have engaged in the unlawful and unconstitutional conduct as alleged herein and intend to continue this unlawful conduct as an ongoing practice and policy of the City of Denver whereas Plaintiffs claim that these practices are unlawful and unconstitutional and therefore seek a declaration of rights with respect to this controversy.

75. As a direct and proximate result of the unconstitutional and unlawful policies, practices and conduct of Defendants, Plaintiffs and members of Plaintiff Class have suffered, and will continue to suffer damages, including but not limited to the deprivation of rights and the destruction of property, including clothing, bedding, medication, personal documents and other priceless personal possession, leaving them without their essential belongings necessary for shelter, health, well-being and personal dignity.

76. The acts of Defendants were and are *willful, wanton, malicious, and oppressive* and done with conscious disregard and deliberate indifference for Plaintiffs and their rights. [13]

---

[13] One of the cruelest aspects of Defendants' policies, practices and conduct was to use donations meant to help the homeless to fund the sweeps and constitutional deprivations that victimized the homeless. Defendants used more than $60,000 in donations meant to help the homeless to instead violate their rights. See CBS Denver 4 June 30, 2016 report: *City Used Homeless Donations To Assist With Homeless Sweep*. See also, Letter From ACLU to Defendants Mayor Hancock and Chief of Staff Dreyer regarding the aforementioned wrongful use of funds as well

CLASS ACTION - 29

77. Plaintiffs have consistently appealed to Defendants to stop, or at least review, these

unconstitutional practices, only to be ignored or dismissed at every turn. The issues

complained of herein have been well-publicized so that Defendants have been noticed

of the illegal and unconstitutional policies, actions and conduct. Key instances of

trying to work and negotiate with Defendants regarding the Homeless Sweeps

include: (a) In May 2013, presentation of the *Camping Ban Report* with results of

surveying over 500 homeless people about the effect of the "Camping Ban" to the

Mayor's homeless commission and a city council committee with specific

recommendations and a request to start an ad hoc committee to work on the issue to

bring the city in compliance with the law. Defendants refused; (b)Plaintiffs Lyall,

Burton and others sent six formal email requests to meet with the Mayor regarding

the problems described herein, two hand delivered, and countless phone calls. The

Mayor has refused to meet with them; (c)Plaintiffs Lyall, Burton and others have sent

Defendant Mayor and members of the Denver city council numerous video interviews

of Plaintiffs and Plaintiff Class describing the property seized from them. Though

repeatedly noticed of Plaintiffs and Plaintiff Class' loss of property and constitutional

deprivations, no named Defendants or city official at any agency ever officially

responded.

---

as criticizing the sweeps approach to homelessness adopted and implemented by Defendants. "A desire not to see or be bothered by people who are homeless is not sufficient to justify denial of basic rights and dignity…" *ACLU Letter to Mayor*, Pg. 2.

CLASS ACTION - 30

78. Despite Plaintiffs' consistent best efforts to have their city address these matters, Defendants' unconstitutional policies, practices and conduct have only increased in their intensity so that Plaintiffs and Plaintiff Class now turn to this Honorable Court for redress under Federal Rule of Civil Procedure 23(b), which requires that "[T]he party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b). Injunctive and declaratory relief will address these deprivations, making this matter appropriate for class certification pursuant to R. 23(b)(2). See also, *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct.2541 at 2551 (2011.) where the "classwide proceeding [will] generate common answers apt to drive resolution of the litigation." Plaintiffs and Class Members, as a proposed class under Fed. R. Civ. P. 23(b)(2), complain as follows:

First Claim for Relief (Denial of Constitutional Right Against Unreasonable Search and Seizure: Fourth Amendment)

79. Plaintiffs reallege and incorporate here paragraphs 1 through 78 above, as though fully set forth.

80. Defendants' above-described policies, practices and conduct violated Plaintiffs' right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitutional and 42 U.S.C. § 1983, which provides that:

CLASS ACTION - 31

*Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .*

81. Defendants, who are persons, under the color of law, have through their policies, practices and conduct caused Plaintiffs, who are U.S. Citizens, to be deprived of their Fourth Amendment rights.

82. As a direct result of Defendants' above-described policies, practices and conduct, Plaintiffs and Plaintiff Class have suffered irreparable harms.

Second Claim for Relief (Violation of Constitutional Bar Against Cruel and Unusual Punishment: Eighth Amendment)

83. Plaintiffs reallege and incorporate here paragraphs 1 through 82 above, as though fully set forth.

84. Defendants' above-described policies, practices and conduct were willful and wanton and violated the ban against cruel and unusual punishment pursuant to Eighth Fourth Amendment to the United States Constitutional and 42 U.S.C. § 1983.

85. By forcing Plaintiffs and Plaintiff Class into bitterly cold weather after taking their blankets and personal belongings used for warmth and survival, Defendants, under

CLASS ACTION - 32

the color of law, inflicted cruel and unusual punishment on Plaintiffs and Plaintiff

Class in violation of their Eight Amendment rights.

86. As a direct result of Defendants' above-described conduct, Plaintiffs and Plaintiff

Class have suffered irreparable harms.


Third Claim for Relief (Denial of Constitutional Right to Due Process of Law: Fourteenth

Amendment)


87. Plaintiffs reallege and incorporate here in paragraphs 1 through 86 above, as though

fully set forth.

88. Defendants' above-described policies, practices and conduct violated Plaintiffs' rights

to due process of law under the Fourteenth Amendment of the United States

Constitution and 42 U.S.C. § 1983.

89. By seizing and destroying Plaintiffs' property without providing a hearing or any

chance whatsoever to address the deprivation of property, and then arbitrarily treating

it as garbage, Defendants have engaged in a mass-scale deprivation and violation of

Plaintiffs' Fourteenth Amendment rights to due process.

90. As a direct result of Defendants' above-described policies, practices and conduct,

Plaintiffs and Plaintiff Class have suffered irreparable harms.


Fourth Claim for Relief (Denial of Constitutional Right to Equal Protection of the Laws:

Fourteenth Amendment)

CLASS ACTION - 33

91. Plaintiffs reallege and incorporate here in paragraphs 1 through 90 above, as though fully set forth.

92. Defendants' above-described policies, practices and conduct are intended and designed to single out homeless people and have the purpose and effect of depriving homeless people of their property and of driving homeless people from the City of Denver. These policies and actions are based on Defendants' animus towards this disfavored group and lacks a rational relationship to any legitimate governmental interest. In adopting and implementing these policies and practices with the intent to harm and disadvantage homeless persons in the City of Denver, the Defendants have violated the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983.

93. Defendants, under color of law, have caused Plaintiffs, who are U.S. Citizens, to be deprived of their Fourteenth Amendment rights to Equal Protection of the laws.

94. As a direct result of Defendants' above-described policies, practices and conduct, Plaintiffs and Plaintiff Class have suffered irreparable harms.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and proposed Plaintiff Class seek relief from this Honorable Court the as follows:

CLASS ACTION - 34

1. For an order certifying the proposed plaintiff class under Federal Rule of Civil Procedure 23(b)(2). A motion for class certification with additional authority will be submitted to this Court subsequent to the filing of this Class Complaint;

2. For an injunctive order permanently enjoining and restraining Defendants from continuing and repeating the unlawful policies, practices and conduct complained of herein;

3. For a declaratory judgment that Defendants' policies, practices and conduct as alleged herein were in violation of Plaintiffs' rights under the United States Constitution as set forth herein;

4. If any property remains, an order compelling Defendants to return Plaintiffs' property—especially unique personal belongings of sentimental worth.

5. For damages in amount according to proof;

6. For punitive and exemplary damages to be determined in accordance with proof;

7. For attorney's fees as provided by law;

8. For costs of suit; and

9. For such other and further relief as the Court may deem just and proper.

CLASS ACTION - 35

Respectfully submitted this the 25th day of August 2016,

s/Jason Flores-Williams, Esq.

*Counsel for Plaintiff*

Phone: 303-514-4524

Email: Jfw@jfwlaw.net

1851 Bassett St.

#509

Denver, Colorado 80202

CLASS ACTION - 36