**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02155-WJM-CBS

RAYMOND LYALL, et al.,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,

      Defendant.

---

**THE CITY AND COUNTY OF DENVER'S REPLY IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

      The City and County of Denver submits the following Reply in Support of its Motion for Summary Judgment [Doc. #125].

## INTRODUCTION

      Plaintiffs have failed to demonstrate that genuine issues of material fact exist which preclude the entry of summary judgment in Denver's favor. Specifically, Plaintiffs lack standing to even pursue their constitutional claims, as none of them lost property during any of the five incidents identified in their Amended Complaint. Their municipal liability claims fail for this reason alone. Further, a review of the *admissible* evidence in this case demonstrates that Denver does not have an alleged custom or practice (written or unwritten) of sending ten or more employees or agents to clear away encampments of homeless persons by immediately seizing and discarding property. Moreover, Plaintiffs have failed to demonstrate deliberate indifference or a direct causal link between their alleged injuries and a custom or practice of the City.  For all

of these reasons, and as more specifically described in Denver's Motion for Summary Judgment, Plaintiffs' Amended Complaint should be dismissed and judgment entered in Denver's favor.

## REPLY CONCERNING UNDISPUTED FACTS

1. Plaintiffs admit ¶ 1. Further, Plaintiffs do not challenge the constitutionality of D.R.M.C. § 38-86.2. [*See* Doc. #106, p. 2.]

2. Plaintiffs admit ¶ 2. *See* ¶ 1, *supra.*

3. Plaintiffs admit ¶ 3. *See* ¶ 1, *supra.*

4. Plaintiffs admit ¶ 4. Regarding training, no admissible evidence disputes that "DPD officers are trained on and follow the specific requirements set forth in D.R.M.C. § 38-86.2." [Doc. 125-3 ¶¶ 8-11.] Plaintiffs' claim that no notice was provided prior to the homeless sweeps is unsupported and contradicted by their own evidence and testimony. [Doc. #138, pp. 33, 37-39.] Thus, ¶ 4 remains undisputed.

5. DPD does not have a policy of immediately taking and disposing of property of persons who are in violation of the camping ordinance. Plaintiffs' denial and record citation do not contradict Commander Lopez's testimony, which is undisputed. [*See* Doc.#125-3 ¶¶ 11, 12].

6. Plaintiffs admit ¶ 6. Further, Plaintiffs do not challenge the constitutionality of D.R.M.C. § 39-1, *et seq.*

7. Plaintiffs admit ¶ 7. *See* ¶ 6 *supra.*

8. Plaintiffs deny ¶ 8 but put forth no evidence disputing that Parks staff are trained to follow a protocol that first requires notice. Plaintiffs cite evidence regarding the cleanup on March 8-9, 2016, which did not take place on Parks land or involve Parks staff. [*See* Doc. #125, pp. 12-18.] Thus, ¶ 8 remains undisputed.

9.     *See* ¶ 8, *supra*.

10.    Plaintiffs deny ¶ 10 but put forth no evidence relevant to Parks regulations or Parks policies. Plaintiffs cite evidence regarding DPD enforcement of Denver ordinances, not Parks. Thus, ¶ 10 remains undisputed.

11.    *See* ¶ 10, *supra*.

12.    *See* ¶ 10, *supra*.

13.    Plaintiffs admit ¶ 13. Further, Plaintiffs do not challenge the constitutionality of D.R.M.C. Chapter 49, Art. IX.

14.    Plaintiffs admit ¶ 14.

15.    Plaintiffs admit ¶ 15.

16.    Plaintiffs deny ¶ 16 but rely only on evidence regarding alleged sweeps, which are different from regular cleanings. [Doc. #143, p. 7 ¶ 27.] Thus, ¶ 16 remains undisputed.

17.    *See* ¶ 16, *supra*.

18.    *See* ¶ 16, *supra*.

19.    Plaintiffs deny ¶ 19 but put forth no evidence regarding the procedure followed during regular cleanings. Plaintiffs cite evidence regarding alleged "sweeps" on March 8-9 and July 13, 2016. Thus, ¶ 19 remains undisputed.

20.    Plaintiffs deny ¶ 20 but put forth no evidence regarding DPD's procedure during regular cleanings. Plaintiffs' additional allegations are addressed in [Doc. #138, p. 8 ¶ 40; p. 10 ¶ 59; p. 13 ¶¶ 82-84]. Thus, ¶ 20 remains undisputed.

21.    *See* ¶ 20, *supra*.

22.     Plaintiffs deny ¶ 22 but put forth no evidence regarding parks or greenways. Plaintiffs' denial only broadly addresses the alleged "homeless sweeps" and confirms that Solid Waste trash trucks were present. Thus, ¶ 22 remains undisputed.

23.     Plaintiffs deny ¶ 23 but put forth no evidence disputing Denver's cited testimony. Thus, ¶ 23 remains undisputed.

24.     Plaintiffs admit the existence of the Homeless Outreach Unit, but deny that DPD's HOU officers are adequately trained. Plaintiffs offer no evidence that relates to training or that otherwise contradicts Denver's cited testimony. Thus, ¶ 24 remains undisputed.

25.     Plaintiffs deny ¶ 25 by disputing the training of Denver's officers and employees. However, Plaintiffs put forth no evidence regarding training. Thus, ¶ 25 remains undisputed.

26.     Plaintiffs admit ¶ 26. Plaintiffs' additional averments are legal conclusions.

27.     Plaintiffs admit ¶ 27. Plaintiffs concede that regular cleanings conducted by Denver "are different than" the "homeless sweeps" alleged in the Complaint.

28.     Plaintiffs admit the increased frequency of regular cleanings. Plaintiffs' additional denials based on lack of knowledge violate WJM Revised Practice Standard III.E.4, and are not supported by evidence. Thus, ¶ 28 remains undisputed.

29.     Plaintiffs admit that notice was provided before regular cleanings. Plaintiffs' additional averment is addressed in [Doc. #138, pp. 33, 37-39]. Thus, ¶ 29 remains undisputed.

30.     Plaintiffs deny ¶ 30 but do not address the facts set forth in ¶ 30. Plaintiffs' assertions are addressed in [Doc. #138, pp. 6-7, 9]. Thus, ¶ 30 remains undisputed.

31.     *See* ¶ 30, *supra*.

32.     Plaintiffs admit ¶ 32, and their further averments are not supported by citations to evidence. Thus, ¶ 32 remains undisputed.

33.     Plaintiffs admit that notice was given. Plaintiffs' additional assertions abandon this Court's class-certification Order and the definition of "sweeps" taken from their own Amended Complaint. [*See* Doc. #138, p. 2 ¶ 1; pp. 44-45.] Thus, ¶ 33 remains undisputed.

34.     Plaintiffs admit ¶ 34. Plaintiffs' further averments and legal conclusions are not supported by evidence that disputes Denver's cited testimony. Thus, ¶ 34 remains undisputed.

35.     Plaintiffs admit ¶ 35.

36.     Plaintiffs admit ¶ 36.

37.     Plaintiffs admit ¶ 37 and do not challenge the constitutionality of D.R.M.C. Chapter 39.

38.     Plaintiffs admit ¶ 38. Plaintiffs' further averments are not supported by any evidence in the record. Thus, ¶ 38 remains undisputed.

39.     Plaintiff admit ¶ 39. Plaintiffs' additional averments are addressed in [Doc. #138, pp. 13-14 ¶¶ 87-88; *id.* at 48 n.19]. Thus, ¶ 39 remains undisputed.

40.     Plaintiffs deny ¶ 40 but do not cite admissible evidence. Plaintiffs' allegations are addressed in [Doc. #138, p. 14 ¶¶ 96-99]. Thus, ¶ 40 remains undisputed.

41.     *See* ¶ 40, *supra*.

42.     Plaintiffs deny ¶ 42 but their response does not identify admissible evidence in the record. *See* WJM Revised Practice Standard III.E.4. Plaintiffs do not dispute that CES was hired to assist with cleanup and removal of hazardous items. Thus, ¶ 42 remains undisputed.

43.     Plaintiffs deny ¶ 43 but do not dispute that numerous people, including Plaintiff Lyall, trespassed onto Denver Housing Authority (DHA) property and erected illegal structures. Plaintiffs' record citation does not contradict this fact. Thus, ¶ 43 remains undisputed.

44.     Plaintiffs deny ¶ 43 but do not dispute that 2500 Lawrence St. is private property, and admit that DHA is a distinct and independent entity. Thus, ¶ 44 remains undisputed.

45.     Plaintiffs deny ¶ 45 but do not dispute the facts as presented; the record citations offered by Plaintiffs do not contradict the facts contained in ¶ 45. Thus, ¶ 45 remains undisputed.

46.     Plaintiffs deny ¶ 46 but do not dispute the facts as presented. Plaintiffs' denial and record citation does not contradict Denver's evidence of what the DHA employee said. Thus, ¶ 46 remains undisputed.

47.     Plaintiffs admit ¶ 47.

48.     Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4, and Plaintiffs do not identify admissible evidence. Thus, ¶ 48 remains undisputed.

49.     Plaintiffs admit ¶ 49.

50.     Plaintiffs deny ¶ 50 but their response does not address the relevant fact: that Plaintiffs' property was removed by DHA's hired agent, not Denver. Nor do Plaintiffs support their response with admissible evidence. Thus, ¶ 50 remains undisputed.

51.     Plaintiffs admit ¶ 51.

52.     Plaintiffs deny ¶ 52 but point to no admissible evidence that disputes the officers' assignment on December 15; further, Plaintiffs admit they were told to go to the St. Francis Center. [Doc. #24-11, p.186: 7-11.] Thus, ¶ 52 remains undisputed.

53. Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Plaintiffs admit they have no evidence to dispute ¶ 53, which remains undisputed.

54. Plaintiffs deny ¶ 54 but do not identify admissible evidence disputing Officer Parks' actions. Thus, ¶ 54 remains undisputed.

55. Plaintiffs deny ¶ 55 but do not identify admissible evidence disputing Officer Lombardi's actions. Plaintiffs' own testimony contradicts their denial. [Doc. #125-12 at 185:8-187:17; Doc. #125-13 at 236:1-238:17.] Thus, ¶ 55 remains undisputed.

56. Plaintiffs deny ¶ 56 but do not identify admissible evidence disputing Officer Craven's actions. Thus, ¶ 56 remains undisputed.

57. Plaintiffs admit ¶ 57. Plaintiffs' additional averments are neither relevant nor supported by admissible evidence regarding December 15. [Doc. #125-12 at 185:3-15; Doc. #125-13 at 236:1-18; *see* Doc. #137, pp. 5-7]. Thus, ¶ 57 remains undisputed.

58. Plaintiffs admit ¶ 58. Plaintiffs' additional averments regarding the presence of other officers are not supported by admissible evidence.

59. Plaintiffs deny ¶ 59, but do not identify admissible evidence that disputes this fact. Ms. Lawson's cited testimony is not related to December 15 and Ms. Howard lacks personal knowledge. [Doc. #124-11 at 184:6-185:15.] Thus, ¶ 59 remains undisputed.

60. Plaintiffs admit ¶ 60.

61. Plaintiffs admit ¶ 61.

62. Plaintiffs admit ¶ 62.

63. Plaintiffs deny ¶ 63, but their contentions are not supported by the record citation and are not responsive to ¶ 63. Thus, ¶ 63 remains undisputed.

64.     Plaintiffs deny ¶ 64 but their response does not contradict the facts set forth in ¶ 64. Plaintiffs cite Mr. Browne's testimony without noting his admission that "not everybody kept it as clean as [he] did," [Doc. # 124-1 at 47:13-22], and Plaintiffs' footnote 3 deliberately misrepresents Denver's statement that people blocked sidewalks *with* large amounts of items, including furniture and trash. Thus, ¶ 64 remains undisputed.

65.     Plaintiffs admit ¶ 65. Plaintiffs' additional contentions related to the testimony of Mr. Milliner and an audit report are not responsive to ¶ 65, which remains undisputed.

66.     Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Plaintiffs admit they have no evidence to dispute ¶ 66, which remains undisputed.

67.     Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Plaintiffs admit they have no evidence to dispute ¶ 67, which remains undisputed.

68.     Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Plaintiffs admit they have no evidence to dispute ¶ 68, which remains undisputed.

69.     Plaintiffs admit ¶ 69.

70.     Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Plaintiffs admit they have no evidence to dispute ¶ 70, and their additional averments are unsupported by any citations to evidence. Thus, ¶ 70 remains undisputed.

71.     Plaintiffs deny ¶ 71 but the single record citation is not responsive: Mr. Milliner's answer to a deposition question about the "camping ban" has no bearing on the purpose of the March encumbrance removal. Thus, ¶ 71 remains undisputed.

72.     Plaintiffs deny ¶ 72, but only dispute that notice signs were posted prior to the March 8-9, 2016, cleanups. This unsupportable claim is addressed in [Doc. #138, pp. 33, 37-39]. Denver's protocol, and ¶ 72, remain undisputed.

73.     Plaintiffs deny ¶ 73 but their response addresses posted signs, not verbal notice. Thus, ¶ 73 remains undisputed.

74.     Plaintiffs deny ¶ 74 but simply restate their response to ¶ 72. Thus, ¶ 74 remains undisputed. *See* ¶ 72, *supra*.

75.     Plaintiffs deny ¶ 75 but simply restate their response to ¶ 72. Thus, ¶ 75 remains undisputed. *See* ¶ 72, *supra*.

76.     Plaintiffs deny ¶ 76 but their cited evidence is not responsive to the substance of ¶ 76: Plaintiffs do not dispute the existence of the process, only whether it was followed in every instance. Plaintiffs' evidence is addressed in [Doc. #138, pp. 30-31; 35-37]; thus, ¶ 76 and the fact of post-cleanup recovery of stored property remain undisputed.

77.     Plaintiffs deny ¶ 77 but simply restate their response to ¶ 76. Thus, ¶ 77 remains undisputed. *See* ¶ 76, *supra*.

78.     Plaintiffs deny ¶ 78 but simply restate their response to ¶ 76. Thus, ¶ 78 remains undisputed. *See* ¶ 76, *supra*.

79.     Plaintiffs deny ¶ 79 but simply restate their response to ¶ 76. Thus, ¶ 79 remains undisputed. *See* ¶ 76, *supra*.

80.     Plaintiffs deny ¶ 80 but simply restate their response to ¶ 76. Thus, ¶ 80 remains undisputed. *See* ¶ 76, *supra*.

81.     Plaintiffs deny ¶ 81 but identify no admissible evidence to contradict the fact that individuals left the area prior to the March cleanup. Thus, ¶ 81 remains undisputed.

82.     Plaintiffs deny ¶ 82 without specific reference to admissible evidence in the record. Plaintiffs' further averment is supported by the declaration of Mr. Hyde, who did not witness the March 8-9, 2016 cleanup. [**Ex. A-31**, Depo. of Marcus Hyde, 66:16 – 67:1.] Thus, ¶ 82 remains undisputed.

83.     Plaintiffs deny ¶ 83 but simply restate their responses to ¶¶ 70 & 76. Thus, ¶ 83 remains undisputed. *See* ¶¶ 70 & 76, *supra*.

84.     Plaintiffs deny ¶ 84 but their cited evidence is not responsive to the substance of ¶ 84: Plaintiffs do not dispute the existence of the process, only whether it was followed in every instance. Plaintiffs' cited evidence is addressed in [Doc. #138, pp. 30-31; 35-37]; ¶ 84 and the fact of post-cleanup recovery of stored property remain undisputed.

85.     Plaintiffs deny ¶ 85 but their cited evidence is not responsive; *see* ¶ 84, *supra*. Plaintiffs' additional remark regarding supervisors is not supported by admissible evidence. Thus, ¶ 85 and the facts of supervisor approval and post-cleanup means to recover stored property remain undisputed.

86.     Plaintiffs admit ¶ 86.

87.     Plaintiffs deny ¶ 87 but simply restate their response to ¶ 69. Thus, ¶ 87 remains undisputed. *See* ¶ 69, *supra*.

88.     Plaintiffs admit ¶ 88.

89.     Plaintiffs deny ¶ 89. Plaintiffs' claim that individuals saw inmates throwing away property does not dispute the evidence of the process in place, and is addressed in [Doc. #138,

pp. 30-31; 35-37]. Thus, ¶ 89 and the fact of supervisor approval and post-cleanup means to recover stored property remain undisputed.

90.     *See* ¶ 89, *supra*.

91.     *See* ¶ 89, *supra*.

92.     *See* ¶ 89, *supra*.

93.     Plaintiffs deny ¶ 93 but identify no admissible evidence disputing the fact of voluntary storage. *See* WJM Revised Practice Standard III.E.4. Thus, ¶ 93 remains undisputed.

94.     Plaintiffs admit ¶ 94.

95.     Plaintiffs admit ¶ 95.

96.     Plaintiffs deny ¶ 96 but fail to identify admissible evidence to overcome the factual averment regarding personal property. Plaintiffs cite the declaration of Mr. Hyde, who did not witness the March 8-9, 2016 cleanups that are the subject of ¶ 96. [Ex. A-31 66:16 – 67:1.] Thus, ¶ 96 remains undisputed.

97.     *See* ¶ 96, *supra*.

98.     Plaintiffs admit ¶ 98. Plaintiffs' further averments are unsupported by the record.

99.     Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Thus, ¶ 99 remains undisputed.

100.    Plaintiffs admit ¶ 100. Plaintiffs' further averment regarding the origins of the "Riverdance" name is irrelevant, unsupported, and incorrect.

101.    Plaintiffs deny ¶ 101, but their contention that class members received no notice prior to Riverdance 3 is addressed in [Doc. #138, ¶¶ 89-90]. Individuals with property in the area

were notified that the cleanup would occur approximately five to seven days before the cleanup. [Doc. #58-4, ¶ 27; Doc. #58-13, ¶ 11; Doc. #125-9 at 52:3-15, Doc. 125-17, ¶ 9.]

102.    *See* ¶ 101, *supra*.

103.    *See* ¶ 101, *supra*.

104.    Plaintiffs admit ¶ 104. Plaintiffs' further averment is irrelevant to any of Plaintiffs' claims and is not supported by the cited evidence. [*See* Doc. #124-11 at 148:12-22.]

105.    *See* ¶ 101, *supra*.

106.    Plaintiffs' contention that class members were not permitted reasonable time to collect their belongings is addressed in [Doc. #138, ¶¶ 75, 79, 84-85]. [*See also* Doc. #137, pp. 2-5 (inadmissibility of Ms. Dotson's unsigned declaration).]

107.    *See* ¶ 106, *supra*.

108.    Plaintiffs' contention that class members' personal property was thrown away during Riverdance 3 is addressed in [Doc. #138, ¶¶ 80, 85-86, 92-93, 98-100]. Plaintiffs' record citations do not support the contention that the only trucks present at the cleanup were garbage trucks. Plaintiffs mischaracterize the testimony of Ranger Knopinski, who stated that when he finds unattended items of value, such as legal or medical items, he and other park rangers give those items to the police department. [Doc. #125-5, 53:20-54:3, 16:8-12.]

109.    Plaintiffs' contention that class members were threatened with arrest during Riverdance 3 is addressed in [Doc. #138, ¶ 83.] *See also* ¶ 108, *supra*.

110.    Plaintiffs deny ¶ 110 but the cited evidence does not create a disputed fact. The cleanup of Arkins Court was not planned as part of Riverdance 3. [*See* Doc. #125 ¶¶ 94, 110.] The testimony cited by Plaintiffs is not to the contrary, nor does it support Plaintiffs' allegations

of ratification. Plaintiffs' allegations related to the barbeque after Riverdance 3 are addressed in [Doc. #138, ¶ 100.] Thus, ¶ 110 remains undisputed.

111.    Plaintiffs deny ¶ 111 but identify no admissible evidence to dispute the fact that Arkins Court is not subject to the jurisdiction of Park Rangers. [Doc. #124-31, 27:9-10;  Doc. #125-5, 58:3-10.] Thus, ¶ 111 remains undisputed.

112.    Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Thus, ¶ 112 remains undisputed.

113.    Plaintiffs deny ¶ 113, but the evidence they put forth in support is insufficient to create a disputed fact. [*See* Doc. #138, ¶ 89]. Plaintiffs' further averment regarding same-day notice is unsupported by any citation to evidence; the evidence shows that both written and verbal notice were given days prior to *and* the day of the cleanup. [Doc. #138-13 ¶ 11; Doc. #138-16 ¶ 4; Doc. #125, ¶¶ 101-102; Doc. #138-5, ¶ 17; Doc. #125, ¶ 112.] Thus, ¶ 113 remains undisputed.

114.    Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Plaintiffs' further averments are legal conclusions unsupported by admissible evidence. Thus, ¶ 114 remains undisputed.

115.    Plaintiffs deny ¶ 115 but do not identify admissible evidence that disputes this fact. Plaintiffs' averments regarding planning and ratification are nonresponsive and unsupported by the cited evidence. *See* ¶¶ 110-111. Thus, ¶ 115 remains undisputed.

116.    Plaintiffs deny ¶ 116 but the responses incorporated by reference do not dispute this fact. *See* ¶¶ 113, 115, *supra*. Thus, ¶ 116 remains undisputed.

117.  Plaintiffs deny ¶ 117, but the cited evidence does not dispute this fact. Plaintiffs' further allegation that Denver "burned property" is addressed in [Doc. #138, ¶ 88, n.19]; *see also* ¶ 108, *supra.* Thus, ¶ 117 remains undisputed.

118.  Plaintiffs deny ¶ 118, but do not support that denial with any evidence. Thus ¶ 118 is undisputed.

119.  Plaintiffs deny ¶ 119, but do not identify admissible evidence sufficient to contradict the fact that there was no organized cleanup or other operation involving 10 or more Denver police officers *anywhere* in Denver on August 20, 2016. [*See* Doc. #125-17 ¶ 11.]  Thus, ¶ 119 remains undisputed.

120.  Plaintiffs admit ¶ 120.

121.  Plaintiffs deny ¶ 121 but their averment and cited testimony concede Mr. Lyall's presence on July 13, 2016. Thus, ¶ 121 is undisputed.

122.  Plaintiffs deny ¶ 122, but the cited testimony does not support that denial. Mr. Jackson claims to have had blankets taken after December 25, 2015, not on December 15, 2015. [Doc. #125-14, 139:14-140:11; 180:25-182:3.] Thus, ¶ 122 remains undisputed.

123.  Plaintiffs admit ¶ 123.

124.  Plaintiffs deny ¶ 124, but their denial is unsupported by admissible evidence, and does not address Mr. Anderson's testimony (contradicting his unsigned declaration) that he was not present when his property was taken and does not know whether DPD took his property. [Doc. #125-25, 132:8-24.]

125.  Plaintiffs' denial for lack of knowledge violates WJM Revised Practice Standard III.E.4. Thus, ¶ 125 remains undisputed.

126.     Plaintiffs admit ¶ 126. Plaintiffs' additional averment is irrelevant to the presence of Mr. Anderson on October 24, 2015, December 15, 2015, or July 13, 2016.

127.     Plaintiffs admit ¶ 127. Plaintiffs' additional averment that Mr. Cooks moved his property prior to the cleanup in March 2016 demonstrates notice of the cleanup and that individuals were allowed to remove their property.

128.     Plaintiffs deny ¶ 128, but their denial is unsupported by evidence. Legal conclusions about verbal notice do not create a factual dispute. Thus, ¶ 128 remains undisputed.

129.     Plaintiffs admit ¶ 129.

130.     Plaintiffs admit ¶ 130.

131.     Plaintiffs admit ¶ 131.

132.     Plaintiffs admit ¶ 132.

133.     Plaintiffs admit ¶ 133.

134.     Plaintiffs admit ¶ 134. *See also* ¶ 126, *supra*.

135.     Plaintiffs admit ¶ 135. *See also* ¶ 126, *supra*.

136.     Plaintiffs admit ¶ 136. *See also* ¶ 125, *supra*.

137.     Plaintiffs admit ¶ 137. *See also* ¶ 126, *supra*.

138.     Denver incorporates its responses to Plaintiffs' Statement of Undisputed Facts in [Doc. #138].

## ARGUMENT

### I.     Plaintiffs' Fourth and Fourteenth Amendment Claims Fail

While Plaintiffs assert both a Fourth Amendment unreasonable seizure claim and a Fourteenth Amendment procedural due process claim, they fail to address their procedural due

process claim in their Response. Nevertheless, it appears that Plaintiffs agree that both claims should be analyzed using a standard of reasonableness. [*See* Doc. #143, pp. 29, 34; Doc. #124, p. 37.] However, Plaintiffs ignore the fatal flaw in their position–that they lack standing because none of them had property taken on any of the dates alleged in their Amended Complaint. *See The Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1189 (10th Cir. 2011) ("[O]ne may not claim standing in this Court to vindicate Constitutional rights of some third party.") (quoting *Barrows v. Jackson*, 342 U.S. 249, 255 (1953)).[1] Nonetheless, without the ability to demonstrate standing, their Amended Complaint must be dismissed. [Doc. #125, SOF ¶¶ 120-133.]

Further, Plaintiffs misunderstand Denver's second argument–that its regular practices for removing items illegally left in parks or the right-of-way are reasonable. Contrary to Plaintiffs' characterization, Denver has not argued "that storing property *in a public place* in violation of the law entitles [Denver] to seize and destroy property." [Doc. #143, pp. 27-28.] Rather, Denver cited authority showing that "Plaintiffs have no constitutional right to trespass or otherwise store their belongings on public property contrary to City ordinance." *See*, *e.g.*, *Lindsey v. Normet*, 405 U.S. 56, 74 (1972); *Church v. City of Huntsville*, 30 F.3d 1332, 1335 (11th Cir. 1994). Plaintiffs do not and cannot dispute that Denver's enforcement of ordinances and regulations is justified by legitimate concerns for public safety and health, or that anyone found in violation of its ordinances is given notice and an opportunity to comply prior to removal of any personal property. In fact, Plaintiffs concede that Denver's written policies and procedures are constitutional. [*See* Doc. #143, p. 7.]

Finally, Plaintiffs fail to present any admissible evidence in response to Denver's

---

[1] While the Supreme Court has recognized limited exceptions to this general rule, such exceptions are not applicable here. *See, e.g., Powers v. Ohio,* 499 U.S. 400, 410–11 (1991).

properly-supported facts establishing that no constitutional violations occurred on any of the dates set forth in Plaintiffs' Amended Complaint. Rather, Plaintiffs merely offer blanket and conclusory assertions and a chart [Doc. #143, pp. 30-33],[2] which are insufficient to raise a genuine issue of material fact regarding the constitutionality of the conduct alleged. *See* Fed. R. Civ. P. 56(c)(1); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1126 (10th Cir. 2003); *Hall v. Bellmon*, 935 F.2d 1106, 1111 & n.5 (10th Cir. 1991). This is especially true since Plaintiffs offer no accompanying analysis to identify the specific, admissible facts which they claim create a genuine issue as to whether any of their constitutional rights were violated.[3]

Nevertheless, Plaintiffs insist—again without reference to admissible evidence or even a date—that there exists "a hotly disputed fact as to whether [Denver] summarily destroyed Plaintiff Class Members' property." [Doc. #143, p. 30.] This is legally and factually insufficient. Plaintiffs are wrong that the Constitution invariably requires storage under all circumstances. Rather, the Fourth Amendment requires "a careful balancing of governmental and private interests." *Soldal v. Cook Cty.*, 506 U.S. 56, 71 (1992). Likewise, the Fourteenth Amendment does not mandate any specific process, only notice reasonably calculated to apprise interested parties and an opportunity for those parties to present objections. *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002); *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007). Thus, the circumstances of each alleged incident must be considered to determine whether a constitutional violation occurred. Plaintiffs' sole contention that "property was only stored when flatbed trucks were

---

[2] Plaintiffs' use of extensive footnotes within the chart is not sufficient to create a genuine issue of fact, especially since Denver's Response to Plaintiffs' Motion and Denver's Motion to Strike both address the inadmissibility and unreliability of Plaintiffs' purported evidence. [Docs. ##137, 138.] However, to the extent the Court considers Plaintiffs' summary judgment evidence in deciding Denver's Motion, Denver requests that the Court also consider Denver's responses and objections to the corresponding paragraphs: ¶¶ 10, 16-21, 23, 30-32, 34-36, 41, 43, 44, 46, 51, 54, 56, 58, 61, & 62.

[3] The chart also omits any mention of August 20, 2016.

present," [Doc. #143, p. 30] cites only evidence of the March 2016 cleanup, where it is undisputed that property was stored.  [Doc. #125, SOF ¶¶ 69-92.]

Plaintiffs also assert that "it was pervasive for Denver officials to conduct sweeps of the homeless without notice," but cite to only one date: July 13, 2016. [Doc. #143, 33.] A closer reading shows that Plaintiffs are referring to what occurred on Arkins Court, not Riverdance (the cleanup along the Platte River). In fact, Plaintiffs repeatedly invoke Arkins Court as evidence of Denver's "unreasonableness and unconstitutionality" sufficient to defeat summary judgment. [*Id.* at 34, 43, 46.] Even as to this single date—setting aside the evidentiary problems with Plaintiffs' "facts" [*see* Doc. #138, ¶¶ 69-102]—Plaintiffs provide no authority for their contention that they and other class members had a constitutional right to indefinitely leave items on Arkins Court alongside the garbage, human waste and other public health concerns. Nor can they show that their expectation that such items would not be removed was reasonable regardless of notice.[4] When the totality of the circumstances is weighed, the significant effort of the Denver Park Rangers, the DPD Homeless Outreach Team and outreach workers to contact those camping or leaving property along the river leading up to the Riverdance cleanup and on the day of the cleanup, (including the separate Arkins Court cleanup), provided reasonable notice and sufficient opportunity for individuals to move anything that was to be kept. That notice, and the process to store any abandoned valuables or important documents, demonstrate that Denver's actions were reasonable and met the requirements of due process. [Doc. #125, SOF ¶ 101-105, 108.]

Plaintiffs have presented no evidence demonstrating genuine factual disputes regarding the constitutionality of Denver's conduct on the dates set forth in their Amended Complaint or its

---

[4] Even if Plaintiffs intend to rely upon the annual Riverdance cleanup, the same would be true.

regular enforcement of ordinances and regulations. Denver is thus entitled to summary judgment on Plaintiffs' unreasonable seizure and procedural due process claims.[5]

## II.     Plaintiffs' Substantive Due Process Claim Also Fails as a Matter of Law

Plaintiffs' Response offers no evidence or legal authority to support their substantive due process claim. Notably, Plaintiffs fail to respond to Denver's argument that their Fourteenth Amendment claim is duplicative of, and therefore subsumed by, their Fourth Amendment claim. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (substantive due process claim inappropriate where Fourth Amendment applies); *Becker v. Kroll*, 494 F.3d. 904, 919 (10th Cir. 2007).

Additionally, Plaintiffs' substantive due process claim is not viable. Plaintiffs contend that their substantive due process rights were violated on December 15, 2015. [Doc. 143, p. 36.] However, to support their argument, Plaintiffs erroneously rely upon cases addressing Eighth Amendment failure-to-protect claims. *See, e.g., Farmer v. Brennan* 511 U.S. 825 (1994); *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008). The Eighth Amendment's deliberate indifference standard does not apply to Plaintiff's substantive due process claim because Plaintiffs were not convicted prisoners. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). Rather, to prevail on their substantive due process claim, Plaintiffs must demonstrate that their physical liberty or integrity was violated through conscience-shocking conduct. *See Becker*, 494 F.3d at 923.

---

[5] Plaintiffs also failed to respond to Denver's argument concerning their procedural due process claim, instead attempting to incorporate the "arguments and authority cited in their Motion for Summary Judgment" without even specifying the sections of their Motion they intend to rely upon. [Doc. #143, p. 34.] This is improper as the issue has not been fully briefed since Denver's arguments substantially differ from those offered by Plaintiffs. *See, e.g., State Farm Fire & Cas. Co. v. Am. Econ. Ins. Co.*, No. 04cv02587-MSK-BNB, 2007 WL 1430102, at *2-3 (D. Colo. May 11, 2007). However, if the Court considers Plaintiffs' summary judgment arguments when deciding this Motion, Denver requests that the Court also consider the factual record and argument regarding the procedural due process claim in its Response thereto. [Doc. # 138 at pp. 28-41.]

Plaintiffs have provided no such evidence. Instead, Plaintiffs merely allude to the "risk of harm" to unidentified class members who were allegedly exposed to cold temperatures and a failure of unidentified Denver "officials" to check to see if they were warm or safe, or offer any "useful services or assistance." [Doc. 143, pp. 35-36.] Absent proof of an actual injury, Plaintiffs' substantive due process claim fails.

Further, the evidence which Plaintiffs cite does not demonstrate that any of the Plaintiffs had items taken from them which were needed to survive on a cold night. [Doc. # 143, pp. 36-37.] Raymond Lyall and Terese Howard lack foundation and personal knowledge regarding events at the Rescue Mission on December 15, as they were together at 24th and California and both admit no property was taken at that location. [Doc. # 125-13, 236:1-240:22; Doc. # 124-11, 184:25-185:4, 187:2-17.] Finally, Mr. Burton's unsigned declaration is inadmissible. [*See* Doc. # 137, pp. 2-6.]  There is simply no evidence that any of the Plaintiffs' property was taken from them, much less that a Denver official engaged in conscience-shocking conduct. Accordingly, summary judgment should enter on Plaintiffs' substantive due process claim.

## III.   Plaintiffs' Equal Protection Claim is Not Viable

Plaintiffs continue to argue that Denver targets homeless individuals and that Plaintiff Class Members are a suspect class, entitling them to a strict scrutiny analysis. However, the case law does not support their argument. *See Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000) ("Homeless persons are not a suspect class, nor is sleeping out-of-doors a fundamental right."). Moreover, in this case, the certified class is not limited to homeless individuals [Doc. #106, p. 16, 17 n.6]. Therefore, Plaintiffs' contention that Denver's policies, practices, and conduct single out and disfavor homeless individuals is moot.

The ordinances at issue and existing procedures governing their enforcement are presumptively valid and only subject to rational basis scrutiny. *See Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). As such, Plaintiffs have the burden of disproving "every conceivable basis which might support [the law at issue.]" *See Windsor v. U.S.*, 699 F.3d 169, 180 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quoting *Heller*, 509 U.S. at 320). Conceding that Denver has a legitimate interest in protecting public health and safety, Plaintiffs nevertheless contend that seizing property left in public areas is not related to sanitation. [Doc. #143, p. 37]. However, none of the Plaintiffs had property taken on the dates alleged in their Amended Complaint, and more importantly, Plaintiffs have presented no evidence to demonstrate that Denver's encumbrance removal policies and procedures are not reasonably related to Denver's legitimate interest in protecting public health and safety. [*Id.*, pp. 27-29]. For all of these reasons, Plaintiffs' equal protection claim fails as a matter of law.

## IV.   Denver is Entitled to Summary Judgment on Plaintiffs' Municipal Liability Claims

Plaintiffs' Response contends that despite Denver's written policies and protocols, a question nevertheless exists concerning whether Denver had a "*de facto* custom under which Denver officials (or individuals acting at their behest) violated Constitutional rights."[6] [Doc.

---

[6] In footnote 50 to their Response, Plaintiffs explicitly disclaim the allegations which formed the basis for their class action, denying any "need to show that the homeless 'sweeps' were conducted pursuant to Denver's practice of 'sending *ten or more employees or agents* to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there.'" [Doc. #143, p. 40 n.50 (emphasis original).] Plaintiffs maintain that the Court's class definition was "derived not from the Complaint," even though the Court's class-certification order explicitly relied on Plaintiffs' own language to define the class. [Doc. #106, pp. 2-3 ("Plaintiffs define 'Homeless Sweeps' more specifically as 'where *more than 10* Denver Police, workers of the [Department] of Public Works and, sadly, inmates at the local county jail, are sent in by the City of Denver to seize the possessions of Plaintiffs and Plaintiff Class without regard for their rights.'" (quoting Plaintiffs' Amended Complaint, Doc. #54 at 19 n.7) (emphasis added).] While Plaintiffs are correct that the class "could very well be amended at a later point," they have not moved to amend their complaint or the certified class. In short, Plaintiffs must prove their claims as they exist now, and may not unilaterally abandon or modify them in order to lighten the burden of proof in the face of summary judgment. [*See also* Denver's Motion to Strike, Doc. #137, pp. 7-10.]

#143, p. 40.] However, Plaintiffs' Response, like their Motion for Summary Judgment, obscures the fact that an individual employee who purportedly engages in an alleged custom or practice, does not, by itself, prove that Denver is responsible for such "*de facto*" custom or practice. A municipal entity may only be held liable for its own unconstitutional policies – not for the alleged tortious or unconstitutional acts of its employees. *See Monell v. Dept. of Social Srvs.,* 436 U.S. 658, 689 (1978). Thus, despite Plaintiffs' attempt to blur the important distinction between *respondeat superior* and municipal liability, acts of individual employees must be distinguished from acts which are fairly attributable to Denver.

Repeatedly, in their Response (and Motion for Summary Judgment) Plaintiffs conflate every alleged incident in which they claim class members' property was taken, regardless of the location or surrounding circumstances, in an attempt to demonstrate their alleged "*de facto*" policy of Denver. A review of these alleged incidents, however, fails to demonstrate that Denver, as opposed to its employees, engaged in any unconstitutional conduct, adopted a policy authorizing its employees to engage in such conduct, or even had notice that its employees were allegedly persistently engaging in conduct which might lead a constitutional rights violation.

**A.      Denver does not have a custom or practice of violating constitutional rights**

**Regular cleanings** – Plaintiffs' Response does not specifically challenge Denver's regular practice of cleaning its rights-of-way. Further, Denver has established that it provides notice of its regularly scheduled cleanups and that property is not taken. [Doc. #125, p. 41.] Thus, Plaintiffs cannot rely upon the regularly scheduled cleanups to establish an unconstitutional custom by Denver.

**The March 2016 cleanup** – Plaintiffs contend that Denver's assertions of advance notice and property storage for the March 2016 cleanup "are plainly contradicted by Plaintiffs' summary judgment evidence," citing to testimony from two Denver employees and from "Plaintiff Class Members sworn testimony." However, a review of that testimony reveals that no actual conflict exists.

Inexplicably, Plaintiffs repeatedly rely upon testimony from Jose Cornejo to show that signs were not posted in advance of the March 8 cleanup. However, Mr. Cornejo explained his confusion when answering questions by Plaintiffs' counsel and clarified that signs were posted in the area at issue prior to March 8 *and* on March 9. [Doc. #125-7, 63:20 - 65:10.] Officer Craven merely testified that she was not part of the planning for the March 8 - 9 cleanup and had no personal involvement in putting up signs. [Doc. # 124-20, p. 35:4 - 36:2.] However, she did verbally advise people in advance of the cleanup.  [*Id*. at 36:3-25.] Thus, neither the testimony of Mr. Cornejo nor Officer Craven raises a genuine issue of material fact concerning notice.

With respect to property storage, Plaintiffs solely cite to the testimony of Ms. Lawson, contending that unattended property was thrown into garbage trucks, which is not an accurate account of her testimony. Rather, Ms. Lawson did not remember the presence of any flatbed trucks on March 8 (which does not mean they were not present), but she admitted seeing Public Works employees putting items "for what [she believed] to be for storage" and she admitted that she does not know what happened to property which had been left unattended. [Doc. #124-2, 148:8-17; 154:14-25 - 155:12; 166:20 - 168:1912; 175:7 - 176:23.]

Plaintiffs cannot create genuine issues of material fact by carving incomplete testimony out of context and interjecting their own interpretation of that testimony.  Rather, the undisputed

evidence demonstrates that March 2016 was the first time the City had conducted such a large-scale cleanup of its rights-of-way and that personal property was not immediately removed and discarded, regardless of whether it was attended or unattended. [Doc. #125, SOF ¶¶ 72-80, 90-92, 99.] It is also undisputed that all personal items which were collected (including unattended items) were stored at the facility leased by Denver and that property owners who were present were given the opportunity to voluntarily move with their property or have their property stored at no cost. [Doc. #125, SOF ¶¶ 72-75, 78, 83-84, 90-94.] Thus, the undisputed facts concerning the March 2016 cleanup provide no support for Plaintiffs' claim of an unconstitutional custom of Denver.

**Riverdance (July 13, 2016)** – Apparently conceding they are unable to establish a genuine issue of material fact sufficient to survive summary judgment on their municipal liability custom claim based upon the annual cleanup known as Riverdance, Plaintiffs instead point to the alleged conduct of two Denver police officers which took place the same day on Arkins Court. However, Plaintiffs have presented no evidence that what happened on Arkins Court was part of Riverdance or sanctioned by Denver in any way. Rather, with respect to Riverdance, the undisputed evidence shows that significant notice was provided prior to the cleanup and property was not removed at the time of the cleanup if the owner was present. [Doc. #125, SOF ¶¶ 102-108, 115-16.] Moreover, Plaintiffs have presented no evidence to refute the procedure of giving important documents and valuables to the Denver Police Department to be stored. Thus, Plaintiffs cannot rely upon Riverdance to establish an unconstitutional policy or practice.

**Arkins Court (July 13, 2016)** – Plaintiffs contend that the testimony of Officer Craven related to the decision to cleanup Arkins Court on July 13, 2016 is contradicted by testimony

from Plaintiff class members. While Plaintiffs may dispute whether advance notice was given and the length of time the individuals who were present were given to remove their property, this dispute is irrelevant to their municipal liability claim. Plaintiffs have presented no evidence to show that the Arkins Court cleanup was conducted pursuant to a custom or practice attributable to Denver or even that Denver was aware of the cleanup. As noted above, the fact that two Denver police officers may have made the decision to cleanup Arkins Court on the same day as Riverdance does not show that Denver is responsible for their conduct. Because the record is devoid of any evidence to demonstrate that a custom or practice of Denver allegedly violated Plaintiffs' constitutional rights – as opposed to alleged conduct by two Denver employees – Plaintiffs cannot establish that a genuine issue of material fact exists concerning whether a custom or practice was the moving force behind the violations they allege. Thus, Plaintiffs cannot rely upon Arkins Court to survive summary judgment on their municipal liability claims.

**<u>October 24 and December 15, 2015</u>** – In their Response, Plaintiffs do not even attempt to address their inability to demonstrate municipal liability based upon the trespass, which occurred on October 24, 2015, on property owned by Denver Housing Authority. The same is true of Officer Craven's alleged conduct on December 15, 2015. Moreover, Plaintiffs' Motion for Summary Judgment (incorporated into their Response) relies upon a fallacy of equivocation: that municipal liability may be imposed upon Denver based upon the conduct of Officer Craven on two separate occasions. However, such is not the case. *See Monell*, *supra*.

Denver has established that to the extent that Plaintiffs' allegations related to December 15, 2015 (and Arkins Court) are disputed, such dispute is not material to their municipal liability claims as there is no evidence that any final decisionmaker (or supervisor for that

matter) had knowledge of either incident. Plaintiffs cannot establish municipal liability merely because Officer Craven (or other Denver employees) allegedly took class members' property without notice and immediately discarded it. Rather, because the acts of individual employees differ from that of Denver, and Plaintiffs have established no conduct by Denver which establishes that a municipal custom or practice was the moving force behind the alleged constitutional violations on any of these respective dates, their claim of municipal liability fails as a matter of law.

**August 20, 2016** – Finally, Plaintiffs fail to present any admissible evidence related to any alleged cleanup which occurred on August 20, 2016, which was conducted pursuant to a custom or practice of Denver.  Thus, because it is undisputed that no cleanup or other operation pursuant to Denver policy took place on this date, Plaintiffs' allegations related to August 20, 2016, should be dismissed.

**B.      Plaintiffs failed to raise a genuine factual issue sufficient to demonstrate deliberate indifference by Denver**

Plaintiffs' Response contradicts itself. While conceding that Denver's ordinances and written protocols are constitutional, Plaintiffs contend that this fact is "irrelevant" because their claims are based upon an unwritten custom or practice "vastly different" from the written policies. [Doc. #143, pp. 40, 42.] Yet Plaintiffs reverse course when attempting to show a genuine issue of material fact concerning Denver's "deliberate indifference" to this alleged pattern of violations by pointing to Denver's written policies and protocols. [*Id.* at 45 & n.52.] Plaintiffs cannot have it both ways. Since Plaintiffs maintain they were injured by an unwritten custom or practice, to survive summary judgment, they were required to present admissible

evidence showing that City decision-makers were aware of, and deliberately ignored, the alleged unwritten "pattern of conduct." They have not and cannot because such evidence does not exist.

Plaintiffs claim that "a significant swath of Denver departments were represented in both coordinating and conducting the sweeps." While this may be true with respect to the March 2016 cleanup and, to a much more limited extent, the July 2016 Riverdance cleanup, there is no admissible evidence which shows that the written policies or practices were enacted or maintained with deliberate indifference to an almost inevitable constitutional injury. *See Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013).  Further, there is no evidence that any policymaker was aware of any unwritten custom or procedure as alleged by Plaintiffs related to these two cleanups which would almost certainly lead to the violation of constitutional rights and acted with deliberate indifference to or tacitly approved of such unwritten customs or procedures. *See Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1042 (10th Cir. 1993) (recognizing that to prove municipal liability based upon a custom, deliberate indifference to or tacit approval of misconduct by the city's policymakers after the policymakers knew of the misconduct must be shown).

At most, Plaintiffs' contentions regarding the December 2015 and July 13, 2016 Arkins Court cleanups show is that a City employee or employees acted in a manner in which Plaintiffs contend led to the violation of their constitutional rights.[7] Nevertheless, no evidence has been presented which shows the existence of a continuing, persistent and widespread practice as alleged by Plaintiffs, and more importantly, Plaintiffs have presented no evidence to show that Denver's policymaking officials were aware of such a custom or practice.

---

[7] Similarly, there is no evidence regarding the October 2015 trespassing incident that would demonstrate the City's deliberate indifference to the constitutional rights of its citizens.

Plaintiffs' contention that Denver "cannot dispute" that its policymakers were aware of any alleged unconstitutional actions because homeless advocates "regularly" met with them is a logical fallacy because such meetings took place *after* the incidents alleged in the Amended Complaint. [Doc. #143, p. 33 (chart).] Thus, these alleged meetings do not even arguably demonstrate actual or constructive notice of alleged unconstitutional conduct to which Denver was deliberatively indifferent.  [*See also* Doc. #138, p. 47 (responding to similar allegations).]

Likewise, Plaintiffs cannot establish that a question of fact exists concerning whether single incident liability – based upon the July 13, 2016 cleanup – could exist.  Without showing that the alleged unwritten custom or policy was attributed to a municipal policymaker, Plaintiffs' claim of single incident liability fails as a matter of law. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-85 (1986) (to impose liability based upon a single incident a plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity); *Butler v. City of Norman*, 992 F.3d 1053, 1055 (10th Cir. 1993) (same).

**C.    Plaintiffs' ratification and failure to train municipal liability theories also fail**

As discussed above, there is absolutely no evidence that any final policymaker directed or ratified the conduct of any employee who allegedly deviated from Denver's constitutional written policies and protocols. Thus, Plaintiffs' ratification theory fails. *See Pembaur*, 475 U.S. at 483-84; *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010).

Further, "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for [municipal] liability under § 1983," *City of Canton v. Harris,* 489 U.S. 378, 387 (1989), and to withstand summary judgment Plaintiffs must show that Denver acted with

deliberate indifference to the rights of persons with whom the untrained employees came into contact. *See Connick v Thompson*, 563 U.S. 51, 61 (2001). However, there is no evidence from which it could even arguably be inferred that Denver failed to train its employees concerning the cleanup protocol or the enforcement of its Ordinances. There is no evidence that Denver had notice, either of a pattern of violations or patently obvious deficiencies, or that its actions (or failure to act) with respect to training were likely to result in constitutional violations. *See Harris*, 489 U.S. at 390 (municipal liability may attach for a failure to train where "the need for more or different training is so obvious, and the inadequacy [in training] so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberatively indifferent to the need.").

Moreover, despite Plaintiffs' attempt to rely upon the July 13, 2016 cleanup of Arkins Court (or Riverdance), Plaintiffs have presented no evidence from which a genuine issue of material fact might arise to show the existence of the very narrow range of circumstances in which the failure to train was so patently obvious that Denver could be held liable without proof of a pre-existing pattern of violations. *See*, *e.g.*, *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997). Thus, judgment should also enter against Plaintiffs on their ratification and failure to train theories.

### D. Plaintiffs' inability to establish causation is also fatal to their municipal liability claims

Plaintiffs' Response does not address the issue of causation. However, a municipal liability claim requires Plaintiffs to demonstrate a direct causal link between the alleged deprivation of their constitutional rights and an official policy or custom of the City. *Brown*, 520 U.S. at 404. Plaintiffs have not established a direct causal link to any alleged unconstitutional

conduct because they (1) have not established that any Plaintiff was harmed by the policies related to Ordinance enforcement, and (2) failed to show the existence of an unconstitutional policy or custom attributable to Denver. Plaintiffs' inability to prove causation should result in summary judgment for Denver on Plaintiffs' municipal liability claims.

## CONCLUSION

For all of the reasons set forth herein and in Denver's Summary Judgment Motion, Denver respectfully requests that Plaintiffs' Amended Complaint be dismissed and judgment entered in Denver's favor.

DATED this 1st day of November 2017.

Respectfully submitted,

s/
Wendy J. Shea
Geoffrey C. Klingsporn
Conor D. Farley
Cristina Peña Helm
Assistant City Attorneys
201 W. Colfax Ave., Dept. 1108
Denver, Colorado 80202
Telephone: (720) 913-3100
E-Mail:  wendy.shea@denvergov.org
geoffrey.klingsporn@denvergov.org
conor.farley@denvergov.org
cristina.helm@denvergov.org

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on this 1st day of November, 2017, I electronically filed the foregoing **THE CITY AND COUNTY OF DENVER'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jason Flores-Williams, Esq.
Email: jfw@jfwlaw.net

David Lane, Esq.
Email: dlane@kln-law.com

Andrew McNulty, Esq.
Email: amcnulty@kln-law.com


*s/ Geoffrey Klingsporn*
Denver City Attorney's Office