IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-2155-WJM-SKC

RAYMOND LYALL,
GARRY ANDERSON,
THOMAS PETERSON,
FREDRICK JACKSON,
BRIAN COOKS, and
WILLIAM PEPPER,

    Plaintiffs,

v.

CITY OF DENVER, a municipal corporation,

    Defendant.

## ORDER DENYING PLAINTIFFS' MOTION *IN LIMINE*

Plaintiffs are homeless persons living on Denver's streets. Proceeding via 42 U.S.C. § 1983, they bring this class action lawsuit against Defendant "City of Denver" (more accurately, the City and County of Denver; hereinafter, "Denver"), arguing that Denver clears homeless encampments through unconstitutional "mass sweeps." A two-week bench trial is scheduled to begin on March 18, 2019. (ECF No. 177.)

Currently before the Court is Plaintiffs' Motion *in Limine* for Order Suspending Camping Ban Enforcement During Trial. (ECF No. 201.) The "camping ban" in question is Denver Revised Municipal Code ("DRMC") § 38-86.2, which prohibits camping on public property not expressly approved for that purpose, or private property without consent of the property owner. Plaintiffs have not challenged the camping ban itself in this lawsuit. (*See* ECF No. 54 ¶ 4 n.2.) But Plaintiffs argue that, absent an

order suspending enforcement of the camping ban during trial, Denver may deprive them of their constitutional right of access to the courts because Plaintiffs and their witnesses will not be able to sleep close enough to the courthouse to make it here in time for their testimony. (*See generally id.*) *See also Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (describing the various constitutional provisions from which a right of access to the courts is said to emanate).

Plaintiffs obviously have not filed a traditional motion *in limine*, *i.e.*, one seeking a pretrial evidentiary ruling. Plaintiffs explain that they filed for this relief as a motion *in limine* because, absent such relief, numerous other evidentiary issues will arise during trial, such as whether an unavailable witness's testimony should be admitted by way of hearsay because Denver may be responsible for causing the witness's unavailability. (ECF No. 201 at 3.) *See also* Fed. R. Evid. 804(b)(6).

The Court presumes without deciding that it has power to enter the requested order, regardless of how Plaintiffs have captioned their motion. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (courts possess inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process"); *Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 690 (N.D. Ga. 2010) ("courts may enter orders or injunctions appropriate to protect both the courts and the rights of litigants in the federal system"). The Court nonetheless declines to enter such an order for the following reasons.

First, the degree to which DRMC § 38-86.2 might disrupt a witness's ability to testify is speculative. Plaintiffs have presented nothing demonstrating that Denver's enforcement of that ordinance is continuous and systematic, such that Plaintiffs or their

witnesses have a high likelihood on any day or night, in any location, of being told to "move along" repeatedly until they have moved so far away that they cannot make it back to the courthouse on time.  To the contrary, named Plaintiff Jerry Burton submits a declaration announcing, "You can find me around 27th and Arapahoe, until the police force me to move."  (ECF No. 201-1 ¶ 1.)  This suggests that enforcement is sporadic, not systematic.

Second, it is always the responsibility of the party calling the witness—more specifically, the attorney representing the party calling the witness—to ensure the witness's presence, by way of subpoena or other arrangements.  The Court recognizes that this is a greater challenge as to the named Plaintiffs and many of Plaintiffs' witnesses, but Mr. Flores-Williams's ability to overcome these unique hurdles is precisely why the Court approved him as class counsel, despite other misgivings.  *See Lyall v. City of Denver*, 319 F.R.D. 558, 568 (D. Colo. 2017) (". . . the Court is satisfied that Plaintiffs' counsel, Mr. Jason Flores-Williams, has spent and will continue to spend significant time developing this case.  The task of organizing a potential class of homeless persons is naturally challenging, but Mr. Flores-Williams has obviously put in much effort and achieved much success, as partially evidenced by the declarations he has obtained and the number of homeless persons who have attended court proceedings in this case."); *id.* at 570 (". . . Mr. Flores-Williams has already shown substantial and commendable dedication to the undoubtedly difficult task of organizing a potential class of homeless persons.  He has developed and demonstrated experience in an area where most lawyers (including most plaintiffs' civil rights lawyers) have none.  [¶] . . . If it were not for Mr. Flores-Williams's unique success in working specifically with

the homeless population . . . the Court would have refused to appoint him as class counsel, or at least as sole class counsel."). The Court is frankly surprised that Mr. Flores-Williams or Plaintiffs' other attorneys have not already made arrangements to ensure their clients' and witnesses' availability at trial.

Third, Plaintiffs' motion and attached declarations fail to mention the various homeless shelters within easy walking distance of the courthouse,[1] much less explain why those shelters will not provide adequate overnight accommodations for the named Plaintiffs and their witnesses.

Fourth, the Court does not have anything approaching a record sufficient to evaluate what effect an order suspending DRMC § 38-86.2 might have on Denver. And the Court is frankly concerned that any such order would take on a life of its own. As Plaintiffs' other two attorneys (Messrs. Lane and McNulty) are well aware from their participation in an unrelated lawsuit, the Court previously granted a limited preliminary injunction—purposefully worded very narrowly—against official efforts to prevent distribution of jury nullification literature on the exterior grounds of Denver's Lindsey-Flanigan Courthouse. *See Verlo v. City & Cnty. of Denver*, 124 F. Supp. 3d 1083, 1097 (D. Colo. 2015). But inaccurate or incomplete reports of the injunction spread, presumably by word-of-mouth, and the Lindsey-Flanigan grounds quickly became viewed as an unrestricted zone for disruptive demonstrations of all kinds. *See Verlo v. Martinez*, 262 F. Supp. 3d 1113, 1129–34 (D. Colo. 2017). Although the officials subject to the injunction could have put an end to most of this behavior without violating

---

[1] *E.g.*, the Denver Rescue Mission's Lawrence Street shelter and Catholic Charities' Samaritan House shelter are on opposite corners of the intersection of Lawrence Street and Park Avenue West, about one half-mile from the Alfred A. Arraj United States Courthouse.

4

the injunction, one actual attempt to do so prompted the plaintiffs in that lawsuit to seek contempt sanctions, *see Verlo v. City & Cnty. of Denver*, 2015 WL 5159146 (D. Colo. Sept. 3, 2015) (finding accusations of contempt unfounded), and the enjoined officials understandably became wary of doing anything that might appear contemptuous, *see Verlo v. Martinez*, 262 F. Supp. 3d at 1120, 1150. The Court predicts that if it enjoined Denver from enforcing DRMC § 38-86.2, similar problems may arise, and on a larger scale.

For all these reasons, the Court will not enjoin Denver from enforcing DRMC § 38-86.2. But there may be a more pragmatic approach to addressing Plaintiffs' feared problem. The undersigned always requires counsel, at the end of each trial day, to inform opposing counsel of the names of those witnesses whom counsel plans to call the next day. In this case, Denver's counsel may be able to relay that information to the appropriate police district(s) for dissemination to the officers who will be on patrol that night. With those names in hand, the Court trusts that the Denver Police Department can prudently exercise discretion not to present even the appearance of attempting to make Plaintiffs' witnesses unavailable. Denver's counsel will be required to address, at the upcoming Final Trial Preparation Conference, why such a plan is not feasible.[2]

Accordingly, for the reasons stated, the Court ORDERS as follows:

1. Plaintiffs' Motion *in Limine* for Order Suspending Camping Ban Enforcement During Trial (ECF No. 201) is DENIED; and

---

[2] Assuming the Court implements this plan, the Court warns that any abuse may prompt the Court to rescind or modify the plan—for example, if multiple homeless persons begin identifying themselves by the names of the next day's witnesses.

2. Denver shall be prepared to discuss, at the upcoming Final Trial Preparation Conference, why it is not feasible to inform the relevant Denver Police Department districts a day in advance of a homeless witness's expected testimony, and to secure the Denver Police Department's cooperation in not forcing these witnesses away from a place within reasonable walking distance of the Alfred A. Arraj United States Courthouse.

Dated this 21st day of February, 2019.

BY THE COURT:

William J. Martinez
United States District Judge